MYRA L. GARLAND, APPELLANT

FROM

DECREE OF JUDGE OF PROBATE.

Somerset.    Opinion February 23, 1927.

*On an appeal to the Supreme Court of Probate where questions are submitted to a jury, exceptions lie to erroneous rulings of the Presiding Justice admitting or excluding evidence or to erroneous instructions to the jury.*

*The appellant on appeal is confined to the issues raised by the reasons assigned in the Court below as grounds for his appeal. The notice of appeal can not be amended in the Supreme Court of Probate by adding thereto additional grounds for appeal.*

*Where the evidence admitted is not harmful, exceptions to the admission will not be sustained.*

*Joint tenancies are not favored in this state, and evidence of an intent to create such tenancies should be clear and convincing. The four unities of title, time, interest, and possession must be present.*

*Where there is any evidence to support a finding of fact by the Supreme Court of Probate, it must stand.*

In the instant case, not only is proof of a completed gift of a joint interest lacking, but, at least, one or more of the unities essential to the creation of a joint tenancy.

Both the doctrine of a joint interest created by such a deposit with a right of survivorship or a right of survivorship by contract violate well-settled principles of law in this state as to the creation of joint tenancies and the transfer of property by gift as well as the Statute of Wills, where the alleged donor has retained control for his own uses during his lifetime.

On exceptions to a decree of Supreme Court of Probate. George H. Garland, husband of the appellant, died November 1st, 1922. At the time of his death, there was in the house six hundred dollars in cash, and on deposit in the Savings Department of the First National Bank of Bangor the sum of $5713.00 in an account opened November 18th, 1915, and according to the deposit card kept by the bank, subject to the withdrawal by George H. Garland or Myra L. Garland

or the survivor. On November 3rd following his death, the six hundred dollars was deposited by the appellant in an account in the Pittsfield National Bank, payable to Myra L. Garland or George H. Garland, and on November 7th, the account in the Bangor Bank, together with the account in the Pittsfield Bank were closed and the deposits were transferred to a new account in the Bangor Bank in the name of the appellant.

The appellant was appointed administratrix of her husband's estate and filed an inventory showing his estate to consist solely of real estate valued at $3500.

Following the dismissal of a petition for license to sell the real estate to pay the debts and expenses of administration, the appellant resigned as administratrix and filed her first and final account in which she did not charge herself with either the six hundred dollars found in the house at the time of her husband's death or the sum on deposit in the Bangor Bank. The Judge of Probate disallowed the account, and ordered a new account filed, containing these items. From this decree the appellant appealed, assigning as her reasons of appeal the following:

*First:* Because her said account was disallowed, the same being just, true, and correct in every particular.

*Second:* Because the Court ordered her to file a new account, when the one disallowed embraced all the items relating to the matter of which she had knowledge.

*Third:* Because the Court ordered her to charge herself with the amount of the deposit in the First National Bank of Bangor standing in the name of George H. Garland and Myra L. Garland either or the survivor to draw.

*Fourth:* Because the Court ordered her to charge herself with the sum of six hundred dollars which was in the possession of the deceased at the time of his death and later deposited by the accountant in the Pittsfield National Bank.

The appellant further set forth under the third reason assigned, that the money on deposit in the Bangor Bank was owned by her and her husband in joint tenancy, and under the fourth reason, that the sum found in the house at the time of his death was her own property, and that she was not liable to account for it to his estate.

In the Supreme Court of Probate, certain questions at the request of the appellant being submitted to a jury, before the case was opened,

the appellant offered an amendment to the reasons of appeal by adding to the third reason assigned the further statement that the transaction with the First National Bank of Bangor at the time the joint account was opened in 1915 constituted a contract between the Bank, her husband, and herself by which the Bank was to hold the deposit, subject to withdrawals by either during their joint lives and by the survivor after the death of either.

The amendment was allowed by the presiding Justice *pro forma* as a matter of right. Three questions were submitted to the jury: (1) whether it was the intention of the parties to create an estate in joint tenancy in the deposit in the First National Bank of Bangor; (2) whether there was a contract entered into between the Bank and the appellant and her husband, by which the Bank was to hold the deposit subject to withdrawals by either during their joint lives and by the survivor after the death of either; (3) whether the six hundred dollars found in the house were wages of the appellant's personal labor not performed in her family?

The jury answered each question in the negative. The Supreme Court of Probate issued a decree in effect affirming the decree of the Probate Court and holding that the funds in the Bangor Bank were not held in joint tenancy; that no contract between the bank and the appellant and her husband existed by which the Bank was to hold the fund subject to withdrawal by either during their joint lives or by the survivor; and that the six hundred dollars was the property of George H. Garland and that both items should be included in the administratrix's account as part of his estate. To which decree appellant excepted. Exceptions overruled. Decree of Supreme Court of Probate affirmed with costs. Case remanded to the Probate Court for further proceedings in accordance with the decree of the Supreme Court of probate.

*Harvey D. Eaton and A. Raymond Rogers,* for appellant.

*Edward F. Danforth, Butler & Butler and Merrill & Merrill,* for appellee.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, JJ., MORRILL, A.R.J.

WILSON, C. J. This case is before this Court on exceptions to the admission of certain evidence submitted to a jury in the Supreme

Court of Probate, and to certain instructions by the presiding Justice to the jury, and also to his decree.

The first question that arose at the trial was over the right of the appellant to amend her reasons of appeal. The question is not directly before this Court on the appellant's bill of exceptions, as the amendment was allowed; but as it may be involved in the exceptions to the charge of the presiding Justice, since if the amendment was improperly allowed, the appellant would not be aggrieved by any errors in the Court's instructions relating to the issues raised by the amendment, and because the bar should not longer be left in doubt as to the law, we will consider it.

Until the case of Thompson Applt, 92 Me., 563, the right in probate appeals to amend the reasons of appeal in the Supreme Court of Probate not only had never been "mooted in argument", so far as the reported cases show, but had never been even suggested by the bar or Court. In the above case, the Court only said in passing, "Whether any amendment would be admissible affording relief to the proponent, we need not consider, as none was offered," although the defect was one readily cured by amendment.

In every previous case where the question of the sufficiency of the reasons of appeal had arisen: *Hughes* v. *Decker*, 38 Me., 162; *Lunt* v. *Aubens*, 39 Me., 397; *Gilman* v. *Gilman*, 53 Me., 184; *Bradstreet* v. *Bradstreet*, 64 Me., 211; *Barnes* v. *Barnes*, 66 Me., 286, the Court had unequivocally stated, without an intimation that the lack could have been cured by an amendment, that the appellant was confined to the reasons stated in the appeal. Appeals have frequently been dismissed where an amendment would have so patently cured the defect that if any doubt had existed, an amendment would at least have been offered and the right to amend determined long ago.

In *Smith Applt.* v. *Chaney*, 93 Me., 214, the Court in sustaining an amendment to the statement of the appellant's interest contained in the notice of appeal held that a statement of the appellant's interest was not one of the reasons of appeal; but inadvertently, it may be, used language indicating that the right to amend the reason of appeal in substance was in doubt.

In *Abbott Applt.*, 97 Me., 278, the Court dismissed an appeal, because the notice of appeal did not show that the appellant was aggrieved, and merely suggested that the notice of appeal might have

been amended showing the interest of the appellant, as was done in *Smith* v. *Chaney supra.*

But in *Merrill Trust Co., Applt.,* 104 Me., 566 and in *Burpee* v. *Burpee,* 109 Me., 379, the Court again in unequivocal language stated the rule: "It is a well settled, and familiar rule in this state on such appeals that the appellant is strictly confined to such matters and questions as are specifically stated by him in his reasons of appeal", without even an intimation that they could be enlarged by amendment.

Under such an apparently accepted construction of the statute governing probate appeals, without the right to amend the reasons of appeal in substance ever being claimed, so far as the reported cases show, and over a period of more than seventy years, the suggestion in the case of *Clark Applt.,* 111 Me., 399, that it was still a "mooted question" carries but little weight, especially as the Court expresses no opinion upon the question.

A probate court and the Supreme Court of Probate are statutory courts and the procedure therein is governed by statute and not according to the common law, *Bradstreet* v. *Bradstreet, supra.* The statute requires the reasons of appeal to be filed in the probate court and the statutory provision for notice must be strictly followed. *Townshend Applt.,* 85 Me., 57. No express authority to allow amendments to the reasons of appeal is given to the Supreme Court of Probate. Necessary authority to take all steps essential to the determination of all issues raised by the appeal is no doubt implied, but we think none is implied to consider issues on appeal other that those filed in the probate court as the grounds for the appeal.

Such appears to have been the accepted construction of this statute since its enactment. If it works a hardship, the Legislature can at any time readily enlarge it. But under the views held by the Court upon the other questions involved, it will work no hardship in this case,—if indeed, the amendment proposed in the case was more than additional specifications under the third reasons of appeal.

Passing to the issues raised by the exceptions, it is urged at the outset that in such cases exceptions do not lie to the admission of evidence or erroneous instructions of the Court to the jury in such proceedings, as the jury's verdict is only advisory, and the Court may not follow it. But it can not be presumed that the Court does not base its decree in any part on the jury's findings or answers, and

if their answers to questions submitted were the result of improper evidence submitted to them or of erroneous instructions as to the law, the error may also appear in the decree of the Court, especially where the decree follows the answers of the jury. *Rawley Applt.*, 118 Me., 109.

Appellant's exceptions one and two are overruled. The evidence of the withdrawal of the funds from the joint account and the deposit in her own name was admissible to show that the funds were in the possession of the administratrix. At least it was harmless. The evidence of her testimony given at a prior hearing has some bearing on the intent of the parties and her own credibility as a witness.

Exceptions three, four, five, six, seven, and eight were to instructions given to the jury by the presiding Justice as to the nature and creation of joint tenancies and the rights of parties under the contract entered into with a bank when deposits such as existed in this case are made. Under the view of the law held by this Court governing such transactions, the instructions given by the Court to the jury, even if not literally complying with the rules hereinafter laid down, the errors were not harmful and the exceptions thereto as well as to the decree must be overruled.

The crux of the case lies in the issue of what the rights of the parties are in such a deposit as the evidence shows existed here. At the time of their marriage in 1911 or 1912 according to the evidence in the case, each had a personal deposit: he in the Bangor Savings Bank of approximately $1100.00 and she in the Pittsfield National Bank of approximately $800.00. On July 5th, 1913, according to the statement of facts contained in the bill of exceptions, they went to work for the Great Northern Paper Co.,—he to have charge of one of its farms; she as housewife and cook. They remained in its employ in one capacity or another until July 14, 1919. What his or her occupation was after that time, whether he alone was the wage earner until his death, is not discolsed, except as her occupation may be inferred from the fact that for more than a year prior to his death they kept a boarder.

From the time of entering the employ of the Great Northern Paper Co., in July, 1913 to July 21, 1919, there is no direct testimony in the case as to what became of their earnings, or where their savings, if any, were kept by them, or under what conditions, or whether either had other property than the personal bank account above mentioned.

On November 18th, 1915, they went to the First National Bank of Bangor and deposited the sum of $1800, which was made payable to either or the survivor. No other deposit was made on this account until after their employment with the Great Northern Paper Co. was terminated in July, 1919.

For three years their pay was seventy dollars per month, and was paid by separate checks, $40 to Mr. Garland and $30 to Mrs. Garland. On August 23rd, 1916, their pay was advanced to $75 per month, but how divided between them does not appear, and July 1st, 1917 they went to work at another farm where they received $85 per month, and after March 1st, 1918, $100.00 per month. After July, 1917 their wages were paid in one check and to Mr. Garland.

In July, 1919, the joint account in the First National Bank of Bangor had increased from interest dividends to $2038.83 and Mr. Garland's personal account in the Bangor Savings Bank to $1847.29. On July 21, 1919, he drew out the entire sum in his personal account and all but one dollar of the joint account on an order payable to himself. As to what was done with this money, nearly $4,000, the evidence does not disclose, except that about this time a farm was bought in Orrington, Maine, which two years later was sold for at least $3,000.00, which was redeposited on the account; nor is the Court informed as to whence came a deposit of $3,000.00 on the joint account in October, 1919, three months after the withdrawals in July, or what was done with a withdrawal by the husband of $2,000 from the joint account in April, 1921. At some time a home was purchased in Pittsfield appraised in his estate at $3500, but with what funds is not disclosed. Nor is the Court informed whence came the deposits on the joint account between October, 1919, and April, 1922 after they had ceased to work for the Great Northern Paper Co., totalling nearly one thousand dollars, whether from his individual earnings, or in part from her earnings outside the family, or whence came three deposits during that period on what originally was her personal account in the Pittsfield National Bank and totalling $272.00.

Without any positive evidence—except a general statement that the real estate was the result of their earnings together and an irresponsive answer by her that some sum without designating any particular amount was the result of their joint earnings—that any part of the joint account in question was the result of their joint efforts, or

that she contributed in any respect to any sums deposited after July, 1919, except as every housewife assists her husband in saving, this Court is asked to find that the Court below erred as a matter of law in finding that there was no joint tenancy in the funds on deposit at her husband's death in the First National Bank of Bangor amounting to nearly $6,000, or any right of survivorship by virtue of the contract entered into with the Bank in consequence of an entry on its books that the sums on deposit should be paid to either or the survivor.

If the appellant sought to establish a joint tenancy under her reasons of appeal, the burden was on her to affirmatively sustain the allegations of her appeal by "unequivocal and compelling language" *Stetson* v. *Eastman*, 84 Maine, 366, 12; *Staples* v. *Berry*, 110 Me., 36, and not leave it to inference and conjecture. She was an unsatisfactory witness, disingenuous, and evasive. The jury were clearly warranted in finding the facts against her where they were in dispute or in rejecting her testimony, unless corroborated by convincing evidence.

But assuming, as we are requested to find, that the original deposits on the joint account came from their joint earnings with the Great Northern Paper Co., such an employment as is shown here neither created them joint tenants in their wages as earned, nor does it necessarily follow from the evidence that Mrs. Garland must now be held to hold in her own right any part of the money so earned.

While under our statute a married woman may claim her wages earned outside of her family, she may also waive her right to them. Mrs. Garland might have claimed and retained her wages in her own right while working with her husband for the Great Northern Paper Co.; but if she permitted them to be mingled with his funds in a deposit in a bank in such manner that they can not be identified, and permitted them to be used by him at his pleasure in purchasing real estate in his name, as the evidence shows that she did, and *a fortiori* if she permitted them to be paid to him as she did during the last two years of their employment, she might well be held to have waived her rights under the statute and they became his by virtue of his common law rights. *Hawkins* v. *Providence & Worcester R. R.*, 119 Mass., 596; *Kelly* v. *Drew*, 12 Allen, 107; *Birkbeck* v. *Ackroyd* 74 N. Y., 356; *McCluskey* v. *Provident Institution for Savings*, 103 Mass., 300, 306; *McCowan* v. *Donaldson*, 128 Mass., 169, 171; 30 C. J. 825-6.

While this Court has not had the precise question before it to pass on, *Sampson* v. *Alexander*, 66 Me., 182; *Robinson* v. *Clark*, 76 Me., 493 and *Gould* v. *Carlton*, 55 Me., 511 clearly indicate that, unless the facts are brought within the statute, the common law applies. The statute being in derogation of the common law, must be construed strictly. Its language is permissive not declaratory. "She may receive her wages." The Massachusetts statute is stronger in her favor, as it expressly declares that her labor is presumed to be on her own account.

It is not necessary, however, for the Court to pass on this question; and we do not, as it does not appear to have been raised or passed on at the trial below; but, if prior to the original deposit in the joint account she had not waived her right to her wages, she and her husband did not hold the wages paid them as joint tenants, but a definite part belonged to him and a definite part to her, each in his or her own right. If such funds were afterward mingled in a bank deposit, they must still be deemed to have held their respective shares in common, unless the form of such deposit created a joint tenancy in the entire fund with a right of survivorship.

Under her reasons of appeal, however, the appellee bases her claim solely on a joint tenancy with a right of survivorship. If any part of their earnings were claimed by her in her own right, she makes no claim to them in these proceedings on that ground, but solely as surviving joint tenant or under the contract with the bank. It has long been settled that she is bound in the Supreme Court of Probate by her reasons of appeal. If, therefore, any part of the joint account was her separate property, unless her claim to a joint tenancy can be established, or a right of survivorship under a contract, she must seek her remedy in some other proceeding than this. In these proceedings, the parties and the Court are bound by the pleadings and the evidence in support of them.

Upon the pleadings, the funds deposited in the joint account, therefore, must be treated as held either in joint tenancy prior to the deposit; or as tenants in common, or the sole property of the husband, and a joint tenancy created by the form of the deposit; or with a right of survivorship created by contract with the bank, in order for the contentions of the appellant to be sustained.

For the reasons above stated, there was clearly no joint tenancy in the earnings prior to the deposit. With the funds the sole property

of the husband or of both as tenants in common, the funds of the husband could only become the property of the wife, without some consideration passing, so that she may hold them against his personal representatives; by gift *inter vivos* or *causa mortis* or by a declaration or conveyance in trust. *Getchell* v. *Bank*, 94 Me., 452, 458. The last may be eliminated as well as a gift *causa mortis*. We are, therefore, only concerned as to whether there was a gift *inter vivos* by the husband to his wife, if the funds were his, or each to the other, if owned in common, which created a joint tenancy in each other's share with the right of survivorship, or in some way the right of survivorship resulted from the contract with the bank—omitting for the moment any question as to whether the amendment was properly allowed. The burden of proof is on the appellant. *Lane* v. *Lane*, 76 Me., 521.

It should be kept in mind that joint tenancies are not regarded with favor in this state, and the evidence establishing such an estate must be clear and convincing. Neither are tenancies in the entirety recognized, *Robinson Applt.*, 88 Me., 17; nor, at least, since the enactment of the statute authorizing married women to hold property has any common law doctrine been recognized here that choses in action payable jointly to husband and wife pass to the survivor.

This Court does not recognize any joint interest in either real or personal property, except that of copartners, tenants in common and joint tenancies. It adheres to the common law rule that in the creation of joint tenancies four essential elements must be present: unity of time, unity of title, unity of interest, and unity of possession. It recognizes as an essential condition of its existence that the unity of interest must continue until the death of one of the joint tenants, that a transfer of the interest of one co-tenant will destroy the joint tenancy and that proof of a right of appropriation of any part of the property alleged to be so held for the sole use of either party is inconsistent with a claim of a joint tenancy. These are well established principles of governing the estates in joint tenancy. *Staples* v. *Berry* 110 Me., 36; 7 R. C. L. 811, 815; 17 Am. & English Ency. of Law, p. 649 and cases cited *Stetson* v. *Eastman*, 84 Me., 366; *Case* v. *Owen*, 139 Ind., 22; *Denigan* v. *San Francisco Sav. Union*, 127 Cal., 142; *Robinson* v. *Mut. Sav. Bk.*, 7 Cal. App. 642.

Even if the four essentials of a joint tenancy can be present in case of a gift of property direct from one person to another, at least all the essentials of a gift as to surrender of absolute control and delivery

must be complied with. *Sav. Bank* v. *Merriam,* 88 Me., 146; *Nutt* v. *Morse,* 142 Mass., 1; *Savings Inst.* v. *Hathorn,* 88 Me., 122; *Savings Ins.* v. *Fogg,* 101 Me., 188; In re Bolin, 136 N. Y. 177.

Not only is proof of a completed gift of a joint interest lacking in the case at bar, but at least one or more of the unities essential to the creation of a joint tenancy. There is no evidence outside of the bank records as to the intent of these parties in opening the new account on November 18, 1915 subject to the right of either or the survivor to withdraw, except such inference as might be drawn from their relations as husband and wife.

The mere entries themselves are not sufficient alone to prove a gift *inter vivos* of any interest either joint or otherwise. There is no evidence of any delivery of the bank book. Presumably, Mrs. Garland had it in her possession when she deposited, as she testified, on two occasions. Other than that, so far as the evidence discloses Mr. Garland may have retained, at least, exclusive physical possession until his death.

The reservation of the right of absolute control during his lifetime, and the exercise of that right by withdrawals for his own uses, not only contravenes any gift *inter vivos,* but without other evidence than the bank's record, is inconsistent with an intent to create a joint tenancy. *Marble* v. *Rec. Gen.* 245 Mass. 505, 507, 509. Without evidence of other intent, it is more consistent with a convenient arrangement for withdrawals during the joint lives of the parties and an intention to make a testamentary disposition of the balance, which being in violation of the Statute of Wills can not be upheld. *Staples* v. *Berry,* 110 Me. 36.

This Court has so frequently held that an entry of this kind, even with other evidence of an intent for the survivor to take, is insufficient to satisfy the requirements of a gift *inter vivos,* or the Statute of Wills, that it can not now be expected to change a rule so well established and withal so obviously sound. *Savings Bank* v. *Merriam supra; Savings Bank* v. *Mahoney,* 121 Me., 49; *Howard Adm'r* v. *Dingley,* 122 Me., 5; *National Bank* v. *Ward,* 122 Me., 227; nor are authorities lacking in other jurisdictions to the same effect. *Gordon* v. *Toler,* 83 N. J. Eq., 25; *McCullough* v. *Forrest,* 84 N. J. Eq., 101; In re Bolin, 136 N. Y., 177; *Denigan* v. *San Francisco Sav. Union, supra,* 3 R. C. L., 714.

Even if there was sufficient evidence of an intent on the part of

either to make a gift of a joint interest with a right of survivorship, we think it must fail under the law of joint tenancies held in this state. The essential unities are not present. *Denigan* v. *San Francisco Sav. Union*, supra., p. 149. In case of a gift of an interest in a chattel or chose in action, there appears to be no unity of time or title. The source of the title of the donor and the time of acquisition appears to be entirely different from that of the donee. Even in case of a change in a bank deposit, the novation by the bank in acknowledging a joint obligation, when its obligation before was only several, does not constitute the source of the donor or donee's title. The donee receives his title of the chose in action from the donor; the bank by novation simply acknowledges a new obligation in place of the old by direction of the donor. The title of the donee does not come from the bank.

It is true that the New York Courts have held that, where there is proof of an intent to create a joint interest in a bank deposit with a right of survivorship, a joint tenancy in the fund is created, and several other states have adopted the same rule, but without reasoning as to the basis on which it rests. *Whitehead* v. *Smith*, 19 R. I., 135; *Blick* v. *Cockins*, 252 Pa. St. 56. Other states which still recognize an estate in entirety treat such deposits as between husband and wife as creating an estate of this nature. *Baker* v. *Baker*, 123 Md., 32; *Craig* v. *Bradley*, 153 Mo. App., 586.

The New York rule also appears to have its origin in the common law relation between husband and wife under which choses in action payable to them jointly passed to the survivor. *Borst* v. *Spelman*, 4 N. Y., 284; *Sanford* v. *Sanford*, 45 N. Y., 723; *West* v. *McCullough*, 108 N. Y. S., 493.

From this beginning, the rule has been extended to others than husband and wife until in later decisions a deposit of this nature, if the intent to create a joint interest is shown, is held to create a joint tenancy in the funds. *Kelly* v. *Beers*, 194 N. Y., 49. This result has not been reached, however, without some questioning. *West* v. *McCullough supra*, p. 497. In more recent years, the status of such funds has been fixed by statute as it has been in Michigan, California, and Illinois. *Clary* v. *Fitzgerald*, 140 N. Y. S., 536; *Wayne Co. Sav. Bank* v. *Smith*, 194 Mich., 151; *Svenson* v. *Hanson*, 289 Ill., 242. .

Inasmuch as in this state the common law rule of survivorship as to choses in action payable jointly to husband and wife, as well as

estates in entirety, have been considered as abolished by the statute conferring on married women the right of holding property to their sole and separate use, Robinson Applt., *supra*, and as this Court adheres to the principles of the common law in the creation of joint tenancies, the New York rule finds no logical resting place in the jurisprudence of this state.

Other states have sustained the right of the survivor in such a deposit upon the theory that such a transaction creates a contract between the bank and the parties in whose name the deposit is made, and under which the funds remaining at the death of either become the property of the survivor, not by gift, but by virtue of the contract, *Deal's Admr.* v. *Mer. & Mech. Sav. Bank*, 120 Va., 297; while others treat the depositing of the funds in the bank, or the novation in case of a change in an existing account, as in effect a transfer to the bank and a reconveyance to the parties, named as entitled to draw, and analogous to a transfer to a third party of real estate and a reconveyance to the grantor and another as joint tenants so that the requirement as to the essential unities is thus complied with. *Chippendale* v. *No. Adams Sav. Bk.*, 222 Mass. 499.

But we can not assent to the doctrine, that where the party to whom the fund belonged retains full control over it during his lifetime, and no actual gift *inter vivos* either of the fund or the chose in action is shown, though made payable to him or another or to the survivor, any title passes to the survivor by virtue of a contract between the bank and the owner and the survivor.

An intended gift can no more pass after death by contract than by a simple order to pay. If the donor retains control for his own uses during his lifetime there can be no gift *inter vivos*, and the theory of a *post mortem* transfer by contract is as clearly of the nature of a testamentary disposition as a gift to take effect after death without such contract.

In view of the disfavor with which joint tenancies are held in this state, neither can we assent to the doctrine of a creation of a joint tenancy by such a transaction by any analogy to a conveyance of real estate to a third person and a reconveyance to his grantor and another as joint tenants.

In the latter case, there is an actual transfer of title to the joint tenants by deed, while in case of a bank deposit, there is no transfer of the funds and a reconveyance, but a transfer of the funds which

the bank retains and a mere acknowledgement of the debt thus created which the bank assents to pay in accordance with the order given by the depositor, and which it does either upon the assumption of a right already vested in both parties, or to be vested, or otherwise upon the mere authority given by the person in whose name the account originally stood or who made the deposit which authority must, of course, cease with his death, if not previously cancelled.   Assuming the title in one of the parties named as entitled to draw, a transfer of title must be effected before the deposit, or of the chose in action afterward.   In either case, the right of the survivor must come from the original owner by gift of the funds or assignment of the chose in action during his lifetime and not from the bank;  and even if the change of title was effected at the time of the deposit, there would still be a clear sequence in point of time between the acknowledgement of the debt and the transfer of the title, or *vice versa*, hence both unity of title and of time essential to the creation of a joint tenancy is lacking, even assuming an intended gift of a joint interest with a right of survivorship and a compliance with all the essentials of a valid gift.

Therefore, both the doctrine of a joint interest thus created with a right of survivorship, or of a right of survivorship by contract, appear to violate well settled principles of law of this state as to the creation of joint tenancies, and the transfer of property by gift, as well as the Statute of Wills, especially when the right of control for his own uses is not surrendered by the donor during his lifetime.

Nor is the case of *Atty. Gen. v. Clark*, 222 Mass., 291, controlling of the case at bar.   In that case, there was real estate and certificates of stock held in joint tenancy, a bank deposit to which the parties contributed equal amounts and no funds were withdrawn, except for joint benefit. .  Here the proportion contributed by each party is left to conjecture and the withdrawals appear to have been on the husband's sole account and proof of any intent to create a joint tenancy outside of the entry on the books of the bank is entirely lacking;  nor can we adopt the view that by a mere agreement between the parties, as was held in *Marble v. Rec. Gen. supra.*, property owned severally in common can be changed to a joint tenancy, or where the right to the full use during life is reserved, a right of survivorship can be created without contravening the Statute of Wills.

If the creation of a joint interest in bank deposits with the right

Vol. 126—8

of survivorship is desirable, the Legislature has power by its fiat to authorize it.    The amendment to sec. 25, chap. 52 under chap. 144 P. L. 1923, however, indicates that the revisers of our banking laws were of the opinion that the adoption of such a rule would not only open wide the door to fraudulent claims, but also encourage the evasion of our tax laws and the circumvention of the Statute of Wills.

There appears to be no real inconsistency between the decision in *Staples* v. *Berry supra* and *Barstow* v. *Tetlow*, 115 Me., 96.    The latter case was decided according to the law as laid down by the Rhode Island Court, which follows New York, and which law governed the case.    *Staples* v. *Berry* should not be construed as holding that there may not be withdrawals on a deposit held in joint tenancy, if once shown to exist, by one tenant for the joint uses; but only that the reservation of the right of withdrawal, if for the sole use of one, especially of the donor is not consistent with an intent to create a joint tenancy, and might destroy such tenancy if one existed.    *Marble v. Rec. Gen. supra* p. 507.    As evidence, at least, it is contrary to such intent.

As to the six hundred dollars found in the house after the death of Mr. Garland, no evidence was offered that would warrant a finding, except by conjecture, that it was other than the property of the husband.    Evidence was introduced, apparently intended to support her contention that the six huundred dollars that was in the house at the time of his death was hers, to the effect that a boarder who was her brother, paid the money for his board to her, though she does not even state when she took the stand that the money thus received constituted any part of the six hundred dollars, but even if it did, we think the presumption upon the testimony in the case is that the money belonged to the husband and the Court's finding in this respect can not be disturbed as a matter of law.    30 C. J. 827; *Flynn* v. *Gardner* 3 Ill. App. 253; *Brown v. Walker*, 81 Ill., Appl. 396; *Porter* v. *Dunn*, 131 N. Y. 314; Re Mallory 35 N. Y. S. 155; *Sampson* v. *Alexander*, 66 Me., 182; Quin Applt., 120 Me., 546.

The decree of the Supreme Court of Probate was in accord with the pleadings and the evidence in the case, and the law applicable thereto.

> *Exceptions overruled.    Decree of Supreme Court of Probate affirmed with costs.*
> *Case remanded to the Probate Court for further proceedings in accordance with the decree of the Supreme Court of Probate.*