| 132 | 441 |
| 134 | ² 50 |

## BURNS *v.* BURNS.

1. WILLS—LEGACY FOR LIFE—POSSESSION OF LEGATEE.
   Under a will giving the property of the testator to his executor, to the intent that his wife should have the full use, benefit, and enjoyment of it for her life, with the remainder after her death to his children, the personal representative of the testator may recover from the wife the amount of money belonging to the estate, and in her possession at the time of the death of the testator. *Hull* v. *Hull,* 122 Mich. 338.

2. GIFT INTER VIVOS—JOINT CONTROL OF BANK ACCOUNT.
   A man had an account with a bank, which was so arranged that his wife could draw the money as well as himself. He told the bank teller it was as much her money as his. At the time of executing his will, he said the money in the bank belonged to his wife; that she had the same control over it that he had. *Held,* that the testimony did not indicate that he had ever deprived himself of authority over the fund, and therefore did not show a gift *inter vivos.*

3. HUSBAND AND WIFE—AGENCY OF WIFE—TERMINATION.
   The authority given a wife to use her husband's money is terminated by his death.

Error to Wayne; Donovan, J. Submitted October 9, 1902. (Docket No. 32.) Decided March 23, 1903.

*Assumpsit* by John Burns, administrator, with the will annexed, of the estate of Michael Burns, deceased, against Anne Burns, for money had and received. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*Alexander Brown* ( *Fred J. Cochran*, of counsel ), for appellant.

*Flynn & Sevald* ( *Charles K. Latham* and *Everett B. Latham*, of counsel ), for appellee.

HOOKER, C. J.   Michael Burns was, during his life, a depositor in the Detroit Savings Bank.   The testimony of its teller shows that as early as March 14, 1893, he had a balance of $7,250.   This balance was transferred on March 14, 1893, to another pass-book, showing a credit to Burns of $7,259.72.   This account was closed on July 5, 1900, and a balance of $6,323.22 then appeared to the credit of Michael Burns.   When the last mentioned pass-book was issued, it was taken away and afterwards kept by Michael Burns.   He made withdrawals of money from time to time, and allowed his wife, Anne Burns, to do the same. The teller testified that by verbal order of Michael he put her name on the book opposite his name, corresponding to his number, so that she would have the right to draw from that account.   "He told me to fix it so that he or she could draw it at any time; that it was as much her money as it was his money.   The balance, when the account was closed out, July 5th, was $6,323.22 due from the bank to Michael Burns."   On that day Mrs. Burns came to the bank, and stated that Michael was at the hospital, sick, and that the doctors said that they thought it unlikely that he would get well.   The teller asked her whether, in that event, she could get this money, and told her that a better way for her to do would be to put this money in her name, as she had a right to draw it at any time, and she said that, if he (the teller) thought it would be a better way, she would do it.   It was thereupon closed out, and the amount transferred to an account opened in her own name, and she took the new pass-book.

Burns died December 8, 1900.   He left a widow, Anne Burns, and six children.   He also left a will, which purports to have been made May 17, 1899.   This provided:

*First.* For payment of debts and funeral expenses.

"*Second.* I give, devise, and bequeath all my property and effects, of every name and nature, to my executors hereinafter named, for the intents and purposes hereinafter mentioned, viz.: I desire that my wife shall have the full use, benefit, and enjoyment of all my property and effects, of every name and nature, for and during the full term of her natural life."

"*Sixth.* Whatever remains after my wife's death I desire shall be divided share and share alike between my beloved children, John Burns, Patrick Burns, Julia Crapo, Maria Guyman, Kate Fahey, and my adopted child, Mary Burns.

"*Seventh.* I hereby appoint my beloved wife, Anne Burns, and Mr. Charles Collins, of the Wayne County Savings Bank, Detroit, sole executors of this, my last will and testament."

John Burns, one of testator's sons, was appointed administrator with the will annexed, and brought this action to recover the amount of said deposit from his mother. A verdict in his favor was directed, and the defendant has appealed.

It is not denied that this was at one time the money of Michael Burns. One Schmiel was called as a witness for the defendant, and he testified that, at the time the will was executed, Mr. Burns was asked by the notary what he was going to do with the money in the bank, and replied: "That belongs to my wife; it is already settled." Morgan J. P. Dempsey testified that he was Burns' spiritual adviser, and that, just prior to the execution of the will, he told him that the money was in the joint name of himself and wife, and that his wife had the same control over that money that he had, and that it was his intention that it should be at her control.

Counsel for the defendant contend for a reversal of the judgment on the following grounds:

1. Because, under the will, the money was given to the wife for her lifetime, and under the law she was entitled to its custody and control.

2. That the money had been given to the wife during her husband's lifetime, and was no part of testator's estate.

Counsel for the plaintiff call our attention to section 9294 of the Compiled Laws, which provides:

"(9294) SEC. 34. All the devisees and legatees who shall, with the consent of the executor or otherwise, have possession of the estate given to them by will before such liability shall be settled by the probate court, shall hold the same subject to the several liabilities mentioned in the preceding section, and shall be held to contribute according to their respective liabilities to the executor, or to any devisee or legatee from whom the estate devised to him may have been taken for the payment of debts or expenses, or to make up the share of a child born after the making of the will, or of a child or the issue of a child omitted in the will; and the persons who may, as heirs, have received the estate not disposed of by the will as provided in this chapter, shall be liable to contribute in like manner as the devisees or legatees."

Manifestly, if the plaintiff is right in his claim that the will gives the property to the custody of the administrator to be held in trust, there would be no opportunity for the application of the statute, because of the clear intent that the defendant should not have it. We are of the opinion that it did not give the property outright to the wife, and that the case is ruled by *Hull* v. *Hull*, 122 Mich. 338 (81 N. W. 89), and *Cole* v. *Cole's Estate*, 125 Mich. 655 (85 N. W. 113).

We are also of the opinion that there was no proof from which a gift *inter vivos* can be inferred. The testimony does not indicate that the testator ever deprived himself of authority over the fund, and, while the testimony of Schmiel, Dempsey, and the bank teller tends to show an intention to allow her to use the fund, such authority was terminated by testator's death. The case of *Brown* v. *Brown*, 23 Barb. 565, is in point.

No error was committed in refusing a new trial.

The judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.