FRANK L. STAPLES, Admr., *vs.* JOHN H. BERRY, Admr. and Trustee.

Sagadahoc.    Opinion December 20, 1912.

*Administrator.    Agent.    Agreed Statement.    Bank Deposits.    Beneficiary.*
*Burden of Proof.    Delivery.    Gift.    Joint Tenancy.    Money Had*
*and Received.    Revised Statutes, Chapter 75, Section 10.*
*Personal Property.    Possession.    Survivorship.    Trust.*

During the married life of plaintiff's intestate, Fred E. Savage, and his wife,
Nellie A. Savage, up to the death of her husband January 26, 1904, she
had deposited in the Gardiner Savings Institution, in the name of Fred
E. Savage and from his earnings, the sum of $1870.98. On or about July
1, 1901, when the deposits amounted to $1400, the title of the Savings
Bank account was changed by one of the officers of the Bank, presumably
by direction of the husband, on its ledger, and on the deposit book, by
inserting the necessary words so as to read, "Nellie A. Savage and Fred
E. Savage, may be drawn by either in any event." After the death of her
husband, she deposited in said Institution on February 8, 1904, $2900, of
the $3000 which she received as insurance on his life, she being the bene-
ficiary in said policy. The defendant claims that a joint tenancy was
created in 1901 with a right of survivorship and that on the death of
Fred E. Savage, the wife took the whole deposit.

*Held:*

1. That the money deposited, prior to the death of the husband belonged
   to him and the burden is on the defendant to show that the title to it or
   any part of it passed from him to his wife, a fact which must be proved
   by clear and convincing evidence.
2. That the defendant's claim that the change made on the bank ledger
   and deposit-book followed by the joint possession of the book created a
   joint tenancy with the right of survivorship, and that on the death of the
   husband the wife took the whole deposit, cannot be sustained.
3. That the more natural and reasonable inference to be drawn from the
   transaction is that the husband intended one of two things,—either to
   constitute the wife his agent in order that the deposit could be drawn
   more conveniently in which case no title passed to the wife; or to make
   a gift to take effect at his death, that is, a testamentary disposition which
   was void under the statute of wills.
4. That the defendant has not produced evidence sufficient to divest Fred
   E. Savage of the title to the deposit at the time of his decease, and that
   the plaintiff as the administrator of his estate is entitled to the amount
   found due by the presiding Justice.

Agreed statement.   Exceptions by the defendant.   Exceptions overruled.

This is an action of assumpsit for money had and received brought by the plaintiff as administrator of the estate of Fred E. Savage, against John H. Berry, executor of the last will and testament of his wife, Nellie A. Berry, who was the former wife of Fred E. Savage, to recover the amount of a Savings Bank deposit. Plea, general issue.  The case was heard by a single justice without a jury, upon an agreed statement of facts.  The Justice found for the plaintiff in the sum of $2400.46, with interest from date of writ, and the defendant excepted to said finding.

The case is stated in the opinion.

*Frank L. Staples*, for plaintiff.

*Barrett Potter, and William T. Hall, Jr.*, for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, HALEY, JJ.

CORNISH, J.   The following essential facts appear in the agreed statement upon which the finding of the Justice at nisi prius was based.

Fred E. Savage and Nellie A. Savage were married in March, 1873, and lived together until the death of the husband, on January 26, 1904.  Two children were born to them, a son, Fred, born in 1877 and still living, and a daughter born in 1874, who married one Lewis and died in 1906, leaving a daughter Marguerite.

December 7, 1910, the widow married the defendant, John H. Berry, executed her will on December 9, 1910, and died testate January 22, 1911, leaving him practically all her estate.  He was subsequently appointed administrator with the will annexed.  The plaintiff was appointed administrator of the estate of the first husband, Fred E. Savage, on July 10, 1911.

This controversy arises over a savings bank deposit, and the agreed facts as to that are as follows:

April 17, 1893, Nellie A. Savage deposited $150 in the Gardiner Savings Institution in the name of her husband, Fred E. Savage. All, or nearly all, the subsequent deposits were made by her.  Withdrawals of $45 and $25 were made by Fred E. on June 28, 1893,

and July 15, 1896, respectively; and one of $30 was made by the wife on July 13, 1893, upon the order of the husband. No other withdrawals were made during the life of Fred E. On or about July 1, 1901, when the aggregate deposits amounted to about $1,400, the title of the Savings Bank account was changed by one of the officers of the institution, presumably by direction of the husband, on its ledger and on the deposit book, by inserting the necessary words so as to read "Nellie A. Savage and Fred E. Savage, may be drawn by either in any event." After that change and until the death of Fred E. Savage, the deposit book was most or all of the time in their joint possession, each having access to it. At the time of the death of Fred E., on January 26, 1904, the account amounted with accrued dividends to $1,870.98. On February 8, 1904, the widow deposited to the credit of this account $2,900, out of $3,000 which she had received as insurance on his life, she being the beneficiary in the policy. On January 16, 1907, the account then amounting to $4,878.46 was transferred by the widow to the Bath Savings Institution and there deposited to her sole credit.

Mr. Savage was for several years prior to the opening of the account with the Gardiner Savings Institution, and most of the time thereafterwards until his death, in the employ of Lawrence Brothers of South Gardiner, as their head sawyer, at wages of three dollars per day, with usually a gift or bonus at the end of the sawing season. During a part of the time, he and his wife carried on a boarding house for employees of Lawrence Brothers, but had ceased to carry it on before the account in the Gardiner Savings Institution began. The deposits of said account, prior to his death, consisted of his earnings and their joint savings. At the time of their marriage, neither husband nor wife had any property worth mentioning and neither received any during their married life except from their earnings.

Under these agreed facts, the plaintiff seeks to recover in this action for money had and received the amount of the deposit in the Gardiner Savings Institution at the husband's death, with interest.

The case was heard by a single justice, who found for the plaintiff in the sum of $2,400.46, with interest from the date of the writ;

and the defendant has brought the case to the Law Court upon exceptions to this finding.

The single issue is, was that deposit the property of Fred E. Savage at the time of the decease on January 26, 1904?

We start out with the conceded fact that the money deposited belonged to the husband. It came primarily from his earnings, and was his alone. How was the title to it, or any part of it, taken from him and given to his wife? The burden is on the defendant to show this; and it must be proved by clear and convincing evidence.

"A strong instinctive passion for property often leads a husband or wife into schemes for the absorption and conversion of the other's possessions, and equity is watchful to defeat all such wrongful appropriations. It requires that the donor's intention to divest himself or herself of the property, and the execution of that intention by an act of delivery, shall be clearly proved by the donee." *Lane* v. *Lane,* 76 Maine, 521. The same requirement exists in the case at bar which is an action for money had and received and equitable in its nature.

It is not claimed by the defendant that prior to July 1, 1901, the wife had gained any title to the deposit, but the contention is set up that by causing the entry to be changed on the bank ledger and the deposit book by adding the words "Nellie A. Savage and" and "may be drawn by either in any event" followed by the joint possession of the book, the wife was thereby made an owner in joint tenancy in the technical sense, so that at the husband's death not only the deposits made prior to such change but also all subsequent deposits became hers by right of survivorship.

The learned counsel for defendant admits in his brief that under the facts as agreed there was no gift causa mortis, and that no trust was created, and he "does not claim that what was done amounted to an absolute gift by Mr. Savage in his lifetime to Mrs. Savage of the entire deposit. In that sense but in that sense only there was no gift inter vivos." His own statement of his position is this: "That a joint tenancy was created in 1901, with a right of survivorship, and that on the death of Mr. Savage his wife surviving, she took the whole deposit; no part of it having been withdrawn after the change in title."

That is not, in our opinion, the true legal effect to be given to the transaction.

In the first place, estates in joint tenancy are not favored in law at the present day and cannot be created in this State without unequivocal and compelling language. *Stetson* v. *Eastman,* 84 Maine, 366. Our statute, first enacted in 1821, provides as follows: "Conveyances, not in mortgage, and devises of land to two or more persons, create estates in common, unless otherwise expressed. Estates vested in survivors upon the principle of joint tenancy shall be so held." R. S., ch. 75, sec. 10.

In *Stetson* v. *Eastman,* supra, it was contended that this section applied to real estate but not to personal property, and this contention was answered by the court in these words: "It seems incredible to us that any such distinction could have been contemplated. There is more reason for rejecting the offensive doctrine in its application to chattels or moneyed securities than in its application to landed estates." While, therefore, joint tenancy in personal property may exist in certain rare cases, it must be created by apt and explicit terms.

Can it be said that the additional entry made upon these savings bank books created necessarily a joint tenancy?

In the second place, it is laid down by all the authorities that there are four essential characteristics of a joint tenancy; unity of interest, unity of title, unity of time and unity of possession. 23 Cyc., 484; 17 Am. & Eng. Enc. of Law, p. 649, and cases cited. Unity of title means that the interests must accrue by one and the same conveyance; and unity of time, that the interests must commence at one and the same time. *Case* v. *Owen,* 139 Ind., 22, 38 N. E., 395.

This would seem to contemplate conveyance or devise by A, the sole owner, to B and C, as joint tenants, not a splitting up of A's ownership so that B becomes a joint tenant with A. But granting for the sake of argument that this might be done by carefully worded conveyance, it can hardly be said that this naked book entry meets the requirement which is so jealously guarded by the law, and that is the only evidence in the case to disclose the husband's intention.

In the third place, a joint tenancy implies that the interests of the joint holders remain the same until death, and then that the survivor takes all. Here, according to the book entry, either party could at any time withdraw the entire deposit, so that the joint property would be dissipated and the survivor would take nothing. This is utterly at variance with the attributes of a joint tenancy.

Another incongruity arises in regard to the deposits made after July 1, 1901, amounting to nearly $500. Were they also transferred, as fast as made? Was it a continuing conveyance in joint tenancy?

So much for the technical requirements of the estate claimed.

But it must not be forgotten that preliminary to the character of the estate granted is the prerequisite of the gift itself. Whatever the interest conveyed, the transfer itself must first be proved, and this case is barren of facts tending to show that the husband intended to make his wife at that time a gift of the whole, either in joint tenancy, or in tenancy in common, except what is to be inferred from the meagre entry in the book. No officer of the bank testified as to what was said when the addition was made or the reason for making it. No declaration of Savage to any one at any time is offered. Neither the intention to give is proved, nor the consummation of that intention by loss of dominion over the property given. The husband continued to have the same control over the deposit after July 1, 1901, as before. The book being in their joint possession, he could have withdrawn every dollar.

The more natural and reasonable inference to be drawn from the transaction is that the husband intended one of two things, either:

First, to constitute the wife his agent in order that the deposit could be drawn more conveniently; or

Second, to make a gift to take effect at his death, that is, a testamentary disposition which is void under the statute of wills.

The first inference is not far-fetched. The husband was a busy breadwinner.. His work was at South Gardiner at some distance from the bank in which his money was deposited. To avoid the trouble of making out an order to his wife whenever he might wish to withdraw, this change might have been made. One such order had already been given by him, and while there happened to be no

withdrawals after the change, the reason apparently was that the husband and wife were prudent savers and they were able to make deposits instead of withdrawals. Before the change, only the husband could withdraw, after it, either could, as the book remained in their joint possession. "A possession which is as consistent with agency as with gift must indicate agency instead of gift. . . . Between husband and wife, his possession of her property is her possession, and her possession of his property is presumed to be his possession." *Lane* v. *Lane,* 76 Maine, 521.

The following are a few of the vast number of cases where entries similar to the case at bar have been held to have been made for convenience only and no title was transferred: "Julia Cody or daughter Bridget Bolin," In re Bolin, 136 N. Y., 177, 32 N. E., 626; "August Grote and wife Edvina or either," *Schich* v. *Grote,* 42 N. J. Eq., 352, 7 Atl., 852; "Lawrence McDonald, Sarah McDonald and the survivor, subject to the order of either," *Dougherty* v. *Moore,* 71 Md., 248, 18 Atl., 35; "A or B, either to draw," *Schippen* v. *Kempkes,* N. J. Eq., (1907) 12 L. R. A. N. S., 355; *Skillman* v. *Wiegand,* 54 N. J. Eq., 198.

On the other hand, if the husband by this entry intended to make a gift that should take effect at his decease, such a testamentary disposition would be void under the statute of wills.

This principle is so firmly established that it needs no discussion. *Burns* v. *Burns,* 132 Mich., 441, 93 N. W., 1077; *Whalen* v. *Mulholland,* 89 Md., 199; *Nutt* v. *Morse,* 142 Mass., 1; *Drew* v. *Hagerty,* 81 Maine, 231; *Norway Bank* v. *Merriam,* 88 Maine, 146; *Bath Savings Institution* v. *Fogg,* 101 Maine, 188.

It is therefore the opinion of the court that the defendant has not produced evidence sufficient to divest Fred E. Savage of the title to the deposit in the Gardiner Savings Institution at the time of his decease.

The justice at nisi prius gave judgment for the plaintiff in the sum of $2,400.46 with interest from date of the writ. This sum was evidently made up by adding to the principal, $1,876.98, the dividends thereon declared by the banks. The plaintiff claims that as the wife treated the fund as her own, her estate should be charged at the rate of six per cent, making a total of $2,740.07 with interest from date of the writ. But the plaintiff did not except

to the finding, and if he had, such a charge would not be equitable under the circumstances of this case. On the other hand, the defendant claims that the amount is too large and that in any event the plaintiff, as administrator of the husband's estate, should recover in this action only two-thirds of the amount due, because the wife would have been entitled to one-third of her husband's estate, which would now belong to the defendant as her administrator. We think, however, that the amount found by the court, is correct, and that the judgment should be for the full amount and not for a fractional part, the distribution between the estates being a matter for the Probate Court and not for this court.

*Exceptions overruled.*