## WILLOUGHBY *v*. HOT SPRINGS ICE COMPANY.

Opinion delivered October 28, 1929.

*W. D. Swain,* for appellant.

*Martin, Wootton & Martin,* for appellee.

SMITH, J. This suit was brought by the administratrix of the estate of James M. Willoughby to recover damages to compensate the loss sustained by his death. It was alleged, and testimony was offered tending to show, that deceased went to the factory of the Standard Ice Company to purchase ice, and, while on the premises of the ice company for this purpose, a truck driven by C. E. Driscole was backed against the platform where deceased was standing, crushing his legs so severely that death resulted. The suit was prosecuted upon the theory that the ice company had negligently failed to provide deceased a reasonably safe place in which to stand and remain while he purchased ice, and the same was being delivered to him.

The complaint named Driscole and the Standard Ice Company as defendants, but, when it was developed that the plant was being operated at the time by the Hot Springs Ice Company, the latter was made a party defendant.

At the conclusion of the testimony a verdict was directed in favor of the ice companies, and from the judgment on this verdict is this appeal.

The ice plant was located about twenty-five feet from the street, and the space thus provided was used as a driveway or parkway for persons wishing to purchase ice. The front of the building in which the ice was stored extended about 140 feet parallel with the street. The building for its entire length was fronted with a platform approximately three feet high, with a concrete step in front also extending the length of the building. The platform and step were used in serving ice to pedestrians and trucks. Deliveries, both wholesale and retail, were made from points on this platform. Deceased lived near the plant, and bought ice daily, usually in small quantities, and delivery was made to him and all other pedestrians in the same manner at the platform, and the purchasers usually stood on the lower step of the platform while they were being served. There was a general invitation to the public to buy ice in this manner.

On the day of his injury deceased was standing on the step, or foundation, as it was interchangeably called, below the platform, which was about hip high to a man standing on the ground, but, if he were on the step, the platform reached his knees. The width of the step was not stated. Deceased was being served by Rufus Brown, a salesman of the ice company. While waiting to be served, deceased stood on the step with his back to the street and to approaching vehicles. Deceased gave his order for ice, and Brown went into the storage room to fill it, and he passed through two doors to do so. As Brown entered the first door he saw Driscole driving rapidly, who, ''when he drove up, shot in like this (indicating).'' The witness testified that the truck backed rapidly into the platform, and that ''it jarred my feet'' while he was in the storage room.

No separate part of the platform had been designated for the use of pedestrians, to the exclusion of vehicles.

Tom Neeley, testifying on behalf of the plaintiff, stated that he had worked at ice plants in Hot Springs and other cities in this State for twenty years, and that

the plant where deceased was killed was constructed in the usual way, and, while he would not say that this was a safe way he considered it as safe for pedestrians as a filling station, and that there was no danger if truck drivers were always careful, but they were not always careful. Witness had never known an ice factory having separate platforms or places assigned on the platforms for pedestrians, to the exclusion of those who came in cars.

There was no defect in the platform or the step attached to it, or in the premises approaching it, and it is not contended that there was anything dangerous about the premises. The only danger arose out of the probability that some of the drivers of the vehicles approaching the platform might not do so carefully. Deceased was in no danger, and would not have been injured, but for the recklessness of Driscole in backing the truck against him. There was no occasion for Driscole to back his truck against deceased, as there was an abundance of space for this purpose along the platform. Driscole was not employed by the defendant ice companies. They had no control over him in the operation of his truck, and the case was not tried upon the theory that Driscole or other truck drivers were accustomed to driving their trucks up to or against the platform in a careless or negligent manner. The argument is that a separate space for the exclusive use of pedestrians who bought ice pursuant to the invitation so to do, should have been provided, and that the failure to provide this exclusive space was negligence, which, in conjunction with the concurring negligence of a third party, was the proximate cause of the injury, and that the ice companies are liable as well as the driver of the truck.

The trial court held that no case had been made against the ice companies, and we concur in that view.

It may be conceded, as is contended on behalf of appellant, that, where one is invited on the premises of another, he has the right to assume that the premises are

reasonably safe for any use compatible with the invitation. But, as we have said, the premises were safe, and there was no danger in their use, and there would have been no injury, but for the negligence of a third party, over whose conduct the ice companies had no control. There was neither opportunity nor occasion for the ice companies to warn deceased, as there was nothing in the testimony tending to show that its employees, in the exercise of ordinary care, should have anticipated the danger. In order to warrant the finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. *Ultima Thule, etc., R. Co.* v. *Benton,* 86 Ark. 289, 110 S. W. 1037.

It may be conceded that Driscole was grossly negligent in backing the truck against deceased, but Driscole was not an employee of the ice companies, and the doctrine of *respondeat superior* has no application to the ice companies, and there is nothing in the testimony to support the finding that the ice companies knew, or should have known, that the safety of any of its customers would be imperiled by an act so negligent as that committed by Driscole, which was the sole cause of the injury.

In the case of *Manning* v. *Sherman,* 110 Me. 32, 86 Atl. 245, 46 L. R. A. N. S. 126, Justice Cornish, for the Supreme Judicial Court of Maine, said:

" 'When the injury is the result solely of the negligent act of a third person, who does not stand in such a relation to the defendant as to render the doctrine of *respondeat superior* applicable, no liability attaches to defendant. The fact that the negligent act which caused the injury was done on a person's land or property will not render him liable, where he had no control over the persons committing such act, and the act was not committed on his account, nor where the third person, whose negligence caused the injury, assumes control of

the owner's property without authority. An owner or occupant of premises, not in a defective or dangerous condition, is not liable for injuries caused by acts of third persons, which were unauthorized, or which he had no reason to anticipate, and of which he had no knowledge.' '' Citing 29 Cyc. 477, 478.

This case is annotated in vol. 34 Ann. Cas. 1914D, 91, and the numerous cases there cited fully sustain the rule above quoted.

The judgment is affirmed.

KIRBY, J., dissents.