MICHAEL J. V. MCDONOUGH, ALIAS

MICHAEL V. MCDONOUGH, EXECUTOR

UNDER THE WILL OF ANNIE F. MCDONOUGH

*vs.*

PORTLAND SAVINGS BANK AND AGATHA M. CAREY.

Cumberland.     Opinion, October 10, 1938.

*Arthur D. Welch,* for plaintiff.
*Gould & Shackley,*
*Francis W. Sullivan,* for defendants.

SITTING: DUNN, C. J., BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J.   The complainant, executor of the last will and testament of Annie F. McDonough, late of Portland, claims and seeks to obtain as an asset of her estate a deposit in the Portland Savings Bank.

The original account was opened by Miss McDonough on September 24, 1934, when she deposited $142.65. To this she added from time to time so that on April 23, 1936 it amounted to $1900.31. It is admitted that on that day it was her sole property. For some days prior to April 23, 1936, she had been ill and it became necessary for her to be taken to the Queen's Hospital. She was living in her brother-in-law's home, managed by his daughter, Agatha M. Carey, Miss McDonough's niece. Miss Carey told her aunt that the doctor said that she should go to the hospital in an ambulance rather than by ordinary conveyance because the latter mode might bring fatal results. Miss McDonough said: "If I am that sick, you had better take that bank book that is in the trunk there and have your name put on it." The niece got and took the book to her aunt, who immediately said (according to the testimony of the niece only, testifying without objection): "Take this and if anything happens to me divide that between yourself and Helen — Dorothy won't need it and Frances — doesn't deserve it." Later that day she took the book to the bank and informed an official of what her aunt had said, whereupon she was given an order to be

signed by Miss McDonough as authority for transfer of the account. This she gave to Miss McDonough that day in the hospital but it was not signed until morning. Omitting the salutation, it read:

"I hereby authorize and direct you to transfer my deposit in said Portland Savings Bank now represented by book of deposit and account No. 103009 to a new account in the names of Annie F. McDonough and Agatha M. Carey payable to either or to the survivor. The total amount due at any time on the said new account, or any part thereof, may be paid by the said Bank to either of the persons named whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient discharge to the said Bank for any payment so made.

Annie F. McDonough."

The niece returned the order to the bank immediately. Upon cancellation of the existing account, a new one was opened and a new book issued, entitled, "Portland Savings Bank, Portland, Maine in account with Annie F. McDonough & Agatha M. Carey payable to either or to the survivor." Miss McDonough died May 7, 1936 from coronary thrombosis.

The justice below sustained the bill, from whose decision Miss Carey appeals.

She claims title by gift *causa mortis*. Whether the alleged gift was made in contemplation and expectation of death need not now be determined, for the case may be disposed of on another ground.

Gifts *causa mortis* "are not to be favored, as they conflict with the general policy of the law relating to the disposition of the estates of deceased persons." *Parcher, Admr.* v. *Saco & Biddeford Savings Institution,* 78 Me., 470, 473, 7 A., 266; also see *Drew, Admr.* v. *Hagerty et al.,* 81 Me., 231, 243, 17 A., 63; *Farnsworth, Admr.* v. *Whiting et als.,* 106 Me., 430, 433, 76 A., 909; *Hatch* v. *Atkinson et al.,* 56 Me., 324, 326.

As in gifts *inter vivos*, so in gifts *causa mortis*, it must appear that the donor intends to and does in fact surrender absolutely all present and future dominion and control over the property, "subject in case of a gift *causa mortis* to revocation during lifetime and

.conditioned upon the death of the donor." *Farnsworth* v. *Whiting*, supra, 430, 433; *Maine Savings Bank, In Equity* v. *Welch et al.*, .121 Me., 49, 53, 115 A., 545, 546; *Dole* v. *Lincoln*, 31 Me., 422, 429.

This Court (truly, of gifts *inter vivos* but equally applicable to gifts *causa mortis*) has recently said:

"Delivery to the donee is not enough unless accompanied with an intent to surrender all present and future dominion over the property. . . . When one's intention is to retain the right to use so much of a bank account as he desires during his life, and that the balance upon his decease shall become the property of the donee (although there may be a delivery of the bank book to the donee), no valid gift *inter vivos* is made. Such is in the nature of a testamentary disposition of property and is legally inoperative because contrary to the Statute of Wills." *Rose, Admx.* v. *Osborne, Jr.*, 133 Me., 497, 501, 180 A., 315, 317.

Also see *Maine Savings Bank, In Equity* v. *Welch*, supra, page 53, 115 A., 545; *Howard, Admr., In Equity* v. *Dingley et als.*, 122 Me., 5, 10, 118 A., 592.

In order to make a valid gift *causa mortis* there must be a clear and intelligent manifestation of an intention to make a present gift and the required intention must be definite and certain. 28 C. J., Sec. 99, pages 687, 688; 12 R. C. L., Sec. 33, page 957.

The delivery necessary to create such a gift "must be such that the donor parts with all present control and dominion over it." 12 R. C. L., Sec. 34, page 959.

It is stated that "in order to be effectual a gift must be fully executed, for the reason that, there being no consideration therefor, no action will lie to enforce it. If anything remains to be done the transaction is a mere executory agreement to give, and the title does not pass." 28 C. J., Sec. 20, page 629.

Title passes upon delivery, for then it is the intention to give culminates in a completed gift. Before but not after an unconditional delivery, the subject matter of the gift is wholly within the control of the donor.

Also, as said in *Drew, Admr.* v. *Hagerty et al.*, 81 Me., 231, 242, 17 A., 63, 64:

"It" (meaning delivery) "is a test of sincerity and distinguishes idle talk from serious purposes. And it makes fraud and perjury more difficult. Mere words are easily misrepresented."

Did Miss McDonough deliver the book to the niece with an intention to surrender all present and future control and dominion over the account it evidenced? This was a question of fact for determination in the first instance by the justice below. He found she did not. That finding must stand unless clearly wrong. *Young, In Equity* v. *Witham*, 75 Me., 536; *Sposedo, In Equity* v. *Merriman et als.*, 111 Me., 530, 538, 90 A., 387; *Goodale, In Equity* v. *Wilson et als.*, 134 Me., 358, 360, 186 A., 876.

The burden to prove the gift *causa mortis* rested on the niece. *Dunbar, Admr.* v. *Dunbar*, 80 Me., 152, 153, 13 A., 578; *Staples, Admr.* v. *Berry, Admr. et al.*, 110 Me., 32, 35, 85 A., 303.

To perform that burden it was her duty to produce evidence, clear and convincing. *Staples* v. *Berry*, supra, page 35, 85 A., 303; *Farnsworth, Admx.* v. *Whiting et als.*, supra, pages 434, 435, 76 A., 909.

The record sufficiently supports the finding of the single justice. The niece herself testified that she understood her aunt's name was to remain on the book as long as she lived, that at no time did she ask to have it taken off, and that had her aunt asked her to take her name off that she would have done so. Furthermore, she confirmed testimony that she had previously given in the Probate Court that if her aunt had wanted some money on the account before she died, she could have drawn it. When on cross-examination she was asked if she claimed that this was a gift to her to take place then, she answered, "No."

When Miss McDonough signed the order to the bank on April 24th, giving it authority to make the transfer, she had kept it over night and in reading it must have noted its express provision, permitting the bank to pay the new account *either* to her or her niece. If, when she let her take the book to have her name put on it, she had relinquished all rights to the account therein (except that of complete revocation inherent to a gift *causa mortis*), it would be

strange indeed that on the following day she would have signed an order whereby she could withdraw all or part of it.

Analyzed, construed and consolidated, what the aunt said to her niece on April 23rd was this in effect: Take this book, have your name put on it with mine, keep it and if anything happens to me divide the account between yourself and your sister. *Then* there was no expectation that a new account would be opened and a new book be issued. No one contends that the aunt's name was to be stricken off and that of the niece substituted. The name of the niece was not put on the first book as directed.

Another failure of compliance appears, for not only did she not have her name put on the original book but, as admitted by her attorney, she "signed a receipt in full for the entire deposit," meaning the original account, and then, it being redeposited, took out the new book in both of their names.

The delivery of the bank book to her did not constitute a completed gift. By that delivery it was not intended that title should then pass and vest in her. She was given possession of the book so that her name could be placed on it as a joint owner with her aunt, each to have an equal right of control and dominion over it. This was not done. Instead the original account was cancelled and the new account opened. This suit is to impress a trust on the new account, as to which the aunt over her own signature, with the knowledge and consent of the niece, expressly reserved the right of withdrawal.

Miss Carey could get title (not purchasing it) in one of three ways, viz., by gift, trust, or bequest. See Annotation 1917C, L. R. A. 551. As there stated, "unless the survivor can show title in one of these ways his claim must fail." She does not claim to have obtained it, either by trust or bequest, but only by gift. For reasons stated, she did not get title by gift either *inter vivos* or *causa mortis*.

Furthermore, she can not hold it under principles of joint tenancy, although Miss McDonough may have intended to create such a tenancy, for the four necessary elements of unity as to time, title, interest and possession are not present. *Staples, Admr.* v. *Berry, Admr. et al.*, supra, pages 32, 35, 36, 37, 85 A., 303; *Garland, Appellant from Decree of Judge of Probate*, 126 Me., 84, 136 A., 459; *Portland National Bank* v. *Brooks et al.*, 126 Me., 251, 137

A., 641; *Heard, In Equity* v. *Gurdy, Admr.*, 127 Me., 480, 144 A., 399; *Rose, Admx.* v. *Osborne, Jr.*, supra, 497, 509, 180 A., 315.

We are aware that a court of high repute has adopted "the contract theory," so called, which, if applied here, might permit the niece to hold this account. *Goldston* v. *Randolph et al.*, 199 N. E., 896 (Mass.), and cases cited therein. But our Court does not recognize this doctrine.

In *Garland, Appellant from Decree of Judge of Probate*, supra, our Court said on page 96:

"But we can not assent to the doctrine, that where the party to whom the fund belonged retains full control over it during his lifetime, and no actual gift *inter vivos* either of the fund or the chose in action is shown, though made payable to him or another or to the survivor, any title passes to the survivor by virtue of a contract between the bank and the owner and the survivor. An intended gift can no more pass after death by contract than by a simple order to pay. If the donor retains control for his own uses during his lifetime there can be no gift *inter vivos*, and the theory of a *post mortem* transfer by contract is as clearly of the nature of a testamentary disposition as a gift to take effect after death without such contract."

It is claimed that *Curtis* v. *Portland Savings Bank*, 77 Me., 151, controls this case. We think not. An aunt, referring to her savings bank book that she had asked her niece to take out of her trunk, said: "Now keep this, and if anything happens to me, bury me decently and put a headstone over me, and anything that it is left is yours." The court found an intent to make an absolute gift *in presenti* and said that "the special qualification annexed to the gift" did not "defeat it. This was only coupling the gift with the trust that the donee should provide for the funeral of the donor."

There at the time of the alleged gift the name of the niece was already on the book. Here it was not. The fact of the addition of another name does not signify an intention to make a valid gift.

"The mere opening of a joint account, each having an equal right to draw, does not, in and of itself, establish a gift. Indeed such an account might tend to show that a gift was not

intended. . . . Where the deposit by a person is in the name of himself and another, . . . the presumption is that it was done for the purposes of convenience only, and this presumption is strengthened by the illness or infirmity of the depositor." 28 C. J., Sec. 64, page 664.

In the Curtis case the niece at the time of the alleged gift already had the right to draw on the account and so when the donor said, "Now keep this, . . ." gave specific directions as to a certain use to be made with part of the funds, and then said, "and anything that is left is yours" (meaning after the expenses directed to be paid had been paid), the court could well say: ". . . The declaration above quoted, accompanied by the manual delivery of the deposit book, rendered unmistakable her intention. The delivery was sufficient."

In that case, the donor declared and limited any future use and benefit she might derive from the account in directing that the expenses of her burial and a headstone should be paid out of it. To accomplish that, she coupled the gift with a trust and the court held that that did not defeat a valid gift *causa mortis*. There the donor made a gift *in presenti* of the whole account, part outright and part in trust, and retained no right of control and dominion over either part. If the trust provisions had not been performed, they could have been enforced for the benefit of the cestui que trust as in any other legally established trust. It so happened the cestui que trust and the trustor were in fact the donor but nevertheless there was no retention of any right to dominate or control the deposit as donor. In the instant case there is present an element lacking in the Curtis case, viz., an intention to open a new joint account at the time of the making of the alleged gift.

On the record in the given case, the justice below could well find that the aunt never intended to surrender absolutely her right of control and dominion over either the first or second account but did intend that each should constitute a joint account (invalid as already stated), available either to her niece or herself, and that the balance remaining upon her own death should be divided equally between the niece and her sister. Thus is evidenced "not a gift *in presenti*, either *inter vivos* or *causa mortis*, but an attempted testa-

mentary disposition of her property after death," violative of the Statute of Wills. *Maine Savings Bank, In Equity* v. *Welch et als.*, supra, page 52, 115 A., 546.

The entry must be,

*Appeal dismissed.*
*Decree below affirmed.*