**In re ESTATE of Nellie KOZLOFF.**

Supreme Judicial Court of Maine.

Jan. 25, 1980.

1979. *See* 17–A M.R.S.A. § 13–A(1).

Smith, Elliott, Wood & Nelson by George F. Wood (orally), Stephen R. Lamson, Karen B. Lovell, Saco, for appellant.

Wheeler, Pomeroy & Snitger by Kenneth E. Snitger, Portland (orally), for appellee.

Before McKUSICK, C. J., and WERNICK, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

At the time of Nellie Kozloff's death on July 6, 1976, four bank-issued certificates of deposit, worth in total $35,569.25, stood in the names of "Nellie Kozloff or Stanley Kozloff [her son], payable to either or to the survivor."[1] All of these moneys had belonged to Nellie Kozloff prior to the time she had caused the certificates of deposit to be issued in the joint names of herself and her son. During the probate proceedings, the administrator of Nellie's estate petitioned the Probate Court (York County) to order Stanley to turn over the funds representing the excess over $5,000 of the certificates of deposit. After hearing, the Probate Court granted the petition and rejected Stanley's claim that the $5,000 survivorship limitation on joint "deposits or accounts" for joint owners who are not husband and wife, as set forth in 9–B M.R.S.A. § 427(4)(B) (1979),[2] is inapplicable to

1. Three of the certificates of deposit had been issued by state-chartered savings banks and one by a state-chartered trust company. Two relatively small savings accounts in savings banks (worth $2,018.85) bore the same joint names and were without dispute subject to the $5,000 limitation of 9–B M.R.S.A. § 427(4)(B) (1979) upon the aggregate of joint "deposits or accounts" that would pass to the son Stanley. *See* note 2 below.

2. The provision reads:

   **B. Property of Survivor.** All such *deposits or accounts,* whenever opened or issued, payable to either or the survivor who are husband and wife including interest and dividends, in the name of the same persons in any financial institution within this State shall, in the absence of fraud or undue influence, upon the death of one of such persons, become the sole and absolute property of the survivor. *All such deposits or accounts,* whenever opened or issued, payable to either or 2 or more or the survivor of those persons who are not husband and wife up to, but not exceeding an aggregate value of $5,000 including interest and dividends, in the name of the same persons in all financial institutions within this State shall, in the absence of fraud or undue influence, upon the death of any such persons, become the sole and absolute property of the survivor or survivors, even though the intention of all or any one of the parties be in whole or in part testamentary and though a technical joint tenancy be not in law or fact created. The amount which so becomes the sole and absolute property of the survivor or survivors of persons who are not husband and wife *shall be exclusive of, and in addition to, any amount to which the survivors are entitled under common law as contributors to the deposit or deposits, account or accounts, share or shares.*

   (Emphasis added) Section 427(4)(B) has been amended by the new Probate Code, but the new enactment is not effective until January 1, 1981. In 1981 section 427(4)(B) will read:

   **B. Property of survivor.** All such deposits or accounts, whenever opened or issued, payable to either or the survivor including interest and dividends, in the name of the same persons in any financial institution within

certificates of deposit. The Superior Court, sitting as the Supreme Court of Probate, affirmed the Probate Court's ruling. Since we also hold that certificates of deposit are "deposits or accounts" within the intendment of section 427(4)(B), we deny Stanley Kozloff's further appeal to this court.

In construing section 427(4)(B), an examination of its history is particularly helpful. The first enactment on the subject of joint accounts, P.L.1907, ch. 69, § 1 (in the savings bank chapter), provided that money deposited in the names of two or more persons, payable to either, could be paid by the bank "to either of such persons with or without the consent of the other, before or after the death of the other." As Stanley Kozloff concedes on appeal, the policy underlying that original statute was exclusively the protection of the bank for paying out to the surviving joint owner the funds represented by a joint account.

That 1907 forerunner of section 427(4)(B) did not effect any exception to the firm Maine common law rule that made it extremely difficult to set up a joint tenancy on a bank account or to pass property at death without compliance with the statute of wills. In *Staples v. Berry,* 110 Me. 32, 85 A. 303 (1912), and *Garland, Appellant,* 126 Me. 84, 136 A. 459, *cert. denied,* 274 U.S. 759, 47 S.Ct. 769, 71 L.Ed. 1338 (1927), the survivors of joint bank accounts payable to either of the named depositors claimed unsuccessfully that the accounts created joint tenancies with a right of survivorship. In *Staples,* the Law Court began with the fundamental proposition that "estates in joint tenancy are not favored in law at the present day and cannot be created in this State without unequivocal and compelling language." 110 Me. at 36, 85 A. at 304. The court then stated the universal requirements for the creation of a joint tenancy—the four unities of interest, title, time, and possession—which did *not* contemplate "[a] splitting up of A's ownership so that B becomes a joint tenant with A." *Id.* at 36, 85 A. at 305. Thus, the "naked book entry" was not sufficient to establish a joint tenancy or a gift *inter vivos;* the creation of a joint account payable to either could reasonably have been intended to be either a convenient arrangement for withdrawals or a testamentary disposition of the balance, which would be void under the statute of wills. *Id.* at 37, 85 A. at 305. *Accord, Garland, Appellant, supra.*

In *Garland* the Law Court in 1927 concluded, "If the creation of a joint interest in bank deposits with the right of survivorship is desirable, the Legislature has power by its fiat to authorize it." 126 Me. at 98–99, 136 A. at 466. The legislature's response two years later was "a carefully restricted" law

> providing for survivorship in the shares of loan and building associations and comparatively small bank accounts jointly held by a limited class of persons, "even though the intention of all or any one of the parties be in whole, or in part, testamentary, and though a technical joint tenancy be not in law or fact created."

*Strout, Adm'r v. Burgess,* 144 Me. 263, 271, 68 A.2d 241, 248 (1949), quoting P.L.1929, ch. 307, § 25(b). For the first time the joint deposit section in the banking laws provided a mechanism for the passage of a property interest at death. The 1929 law limited survivorship in joint bank accounts to accounts up to $3,000 payable to "persons or to either or the survivor who are husband or wife, parent or child." P.L.1929, ch. 307, § 25(d). Subsequent amendments have been only in the direction of increasing the amount that may be passed otherwise than by a valid will or joint tenancy, and broadening the degrees of relationship between the decedent and the surviving joint tenant.

this State shall, in the absence of fraud or undue influence, upon the death of one of such persons, become the property of the parties as provided in Title 18–A, section 6–104.

18–A M.R.S.A. § 6–104 will provide in part:

(a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

In *Strout*, certain certificates of stock, originally the sole property of Charles T. Burgess, were issued to "Charles T. Burgess or Charles M. Burgess [the decedent's nephew] as joint tenants with right of survivorship and not as tenants in common." 144 Me. at 264–65, 68 A.2d at 245. The court reaffirmed the common law requirement of the four unities in the creation of joint tenancies; found that the attempted transfer of the various stock certificates from Charles T. to himself and Charles M. lacked the two unities of time and title; and held that intent alone is not sufficient to create rights, such as those inhering in a joint tenancy. *Id.* at 268–69, 68 A.2d at 247–48. In response to the *Strout* decision that a conveyance of personal property by one party to himself and another did not create a joint tenancy, the legislature enacted P.L. 1951, ch. 51 [now 33 M.R.S.A. § 901 (1978)], which removed the requirements of the unities of time and title—but *only* for the transfer of corporate stock.[3] *See Milliken v. First National Bank of Pittsfield*, Me., 290 A.2d 889, 890–91 (1972).

■ In the case at bar, as in *Staples, Garland,* and *Strout*, the survivor was not entitled to the jointly-held funds as a joint tenant or as the recipient of a valid testamentary gift. The certificates of deposit at issue here had originally been owned by Nellie and William Kozloff, Stanley's father. When William died in November, 1974, the certificates then owned entirely by Nellie were placed in the names of herself and her son Stanley, "payable to either or to the survivor." But Nellie could not thereby create a joint tenancy between Stanley and herself, nor could she make the certificates a gift to take effect at her death, as *Garland* and *Staples* make clear. The only way Stanley could have a survivorship interest to any extent in the certificates that would itself survive the statute of wills or the four unities requirements for a joint tenancy was through the limited exception provided by 9–B M.R.S.A. § 427(4)(B).

The conclusion that Stanley's survivorship interest in the certificates of deposit is governed by 9–B M.R.S.A. § 427(4)(B) is supported by an analysis of other provisions of Title 9–B, the comprehensive code regulating banks and banking that was enacted by P.L.1975, ch. 500. That code had been drafted by a special committee, *see* Report of the Governor's Banking Study Advisory Committee, October 13, 1974, and we may justifiably assume that the draftsmen used the terms "deposits" and "accounts" consistently throughout. We need point to only some of the clear evidence elsewhere in Title 9–B that certificates of deposit are encompassed in the comprehensive term "deposits." First, section 521 sets forth the "deposit powers" of a savings bank, and section 522(2) specifically provides:

> **2. Certificates of deposits.** A savings bank may accept sums of money on deposit and issue certificates of deposit providing for payment of interest at a specified rate; . . . .[4]

Second, a savings bank, like all other financial institutions, must, pursuant to section 422(1), "have its *deposits or accounts* insured by either the Federal Deposit Insur-

---

**3.** As section 901 makes clear, certificates of deposit do not come within this limited exception to the common law rule created for corporate securities:

> **§ 901. Corporate securities**
>
> Certificates of stock in corporations, corporate bonds,. corporate debentures and other corporate securities, not including shares in building and loan associations, record title to which is held in the name of 2 or more persons as joint tenants or under language indicating the intention that said property be held with the right of survivorship, shall be deemed to be held in an estate in joint tenancy with all the attributes and incidents of estates in joint tenancy created or existing at common law, and shall be deemed to be so held even though said property may have been transferred directly by a person to himself jointly with another or other persons.

**4.** Section 722(2), dealing with the deposit powers of a savings and loan association, similarly provides:

> **2. Time accounts.** An association shall issue to each depositor an account book, certificate or some other evidence of a savings account or savings deposit which shall clearly indicate any time or notice requirement pertaining thereto.

ance Corporation or the Federal Savings and Loan Insurance Corporation" (emphasis added), and must "comply with all statutes and regulations governing the insurance of deposits or accounts" by the F.D.I.C. or F.S.L.I.C. 9–B M.R.S.A. § 422(4). Both the F.D.I.C. regulation [12 C.F.R. § 329.1(c)] and the Maine statute [9–B M.R.S.A. § 131(44) (1979)] define a "time certificate of deposit" to be "a deposit evidenced by a negotiable or nonnegotiable instrument," etc.[5] And third, section 427 itself, in subsection 9 entitled "Lost evidences of deposits or accounts," contains a paragraph b entitled "Lost certificate of deposit or account."

In conclusion, the certificates of deposit payable to Stanley Kozloff as the survivor of his mother Nellie are joint "deposits or accounts" controlled by section 427(4) of the banking code. He has no property right to those certificates by virtue of a common law joint tenancy or a valid testamentary disposition.[6] His property interest as the survivor is a statutory one only and is limited to $5,000 in the aggregate out of the certificates of deposits and savings accounts standing in the joint names of himself and his deceased mother at her death.

The entry must be:

Appeal denied.

Judgment affirmed.

GLASSMAN, J., did not sit.

---

**5.** The full definition of "time certificates of deposit" is as follows:

> **44. Time certificate of deposit.** "Time certificate of deposit" means a deposit evidenced by a negotiable or nonnegotiable instrument which provides on its face that the amount of such deposit is payable to bearer or to any specified person or to his order:
>
> **A.** On a certain date, specified in the instrument, not less than 30 days after the date of the deposit; or
>
> **B.** At the expiration of a certain specified time not less that 30 days after the date of the instrument; or

**C.** Upon notice in writing which is actually required to be given not less than 30 days before the date of repayment; and

**D.** In all cases only upon presentation and surrender of the instrument.

**6.** The new Probate Code provision of section 427(4)(B) merely removes the $5,000 limitation and does not change the requirement of law that certificates of deposit qualify as "deposits or accounts" in order to pass upon the death of the other joint depositor. *See* note 2 above.