## MILTON G. SHAW

### vs.

## MONSON MAINE SLATE COMPANY, and others.

Piscataquis.    Opinion December 14, 1901.

*Equity.    Creditor's Bill.    Pledge.    Practice.    Stat. 1891, c. 53; R. S., c. 77, § 6,*
*par. IV; par. X; c. 91, §§ 57, 58.    Equity Proc. Act, 1881, § 22.*

1.  A creditor's bill under chapter 77, § 6, par. 4 of the revised statutes is not
    the proper process for a pledgee to enforce his claim against the pledgeor
    and the property pledged.

2.  Under the equity procedure act of chapter 77, § 10 of the revised statutes,
    a case should not be reported to the law court until the pleadings have
    been completed with all necessary amendments and the evidence taken out;
    and not even then, unless the decision of the law court upon the questions
    of law involved will practically determine the case without further amend-
    ment or proceedings.

3.  While the court has full discretionary power to allow amendments to
    equity pleadings at any time, and will exercise that power at any stage of
    the case upon reasonable terms, or even without terms if necessary for the
    preservation of some substantial right, it will not ordinarily allow amend-
    ments to the bill after the case has been reported to the law court.    If the
    bill cannot then be sustained without further amendment, it will ordinarily
    be dismissed with costs and the plaintiff left to bring a new bill.

4.  In this case the bill cannot be sustained as a creditor's bill and it does
    not appear that the plaintiff's rights, which are those of a pledgee, will be
    irretrievably lost if the amendment be refused and this particular bill be
    dismissed without prejudice.

On report.    Creditor's bill dismissed without prejudice.

This was a creditor's bill in equity under R. S., c. 77, § 6, par.
IV, against the Monson Maine Slate Company, Otis Martin, deputy
sheriff of Piscataquis county, and the First National Bank of Guil-
ford, to enforce the plaintiff's right, as a judgment creditor, to certain
bonds issued by the Slate Company.

*A. N. Williams and Enoch Foster*, for plaintiff.

*H. Hudson and J. B. Peaks*, for defendants.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

EMERY, J.   In this bill in equity the plaintiff has set forth:   (1) that he had recovered a judgment against the Monson Maine Slate Company,—(2) that upon the execution issued upon that judgment the officer undertook to seize and sell as the property of the judgment debtor forty $1000 bonds, numbered from 261 to 300 inclusive, issued by the debtor company as part of an issue of $300,000 of bonds,—(3) that the bonds could not be seized and sold upon execution, and (4) that the bonds were in the possession of the officer and of the First National Bank of Guilford as the bailee of the officer, and were the property of the debtor company, which company had no other property from which the execution could be satisfied. The debtor company, the officer, and the bank were made parties defendant.

The prayers in the bill are,—(1) that the officer be enjoined from selling the bonds pendente lite,—(2) that the bank be enjoined from giving up the bonds to any person pendente lite,—(3) that the officer transfer the bonds to some appointee of the court to be sold by him under the court's order for the satisfaction of the plaintiff's judgment, —(4) that the bonds be so sold,—(5) that the plaintiff be authorized to bid at the sale,—(6) for general relief.   The injunctions prayed for pendente lite were granted.

To this bill the company demurred and also answered denying the allegations in the bill, and alleging that the company had never sold or issued the forty bonds named, and that the officer and the bank had no right to detain them.   The case was not set for hearing upon the demurrer, but a replication was filed, and the case was then heard by a single justice upon bill, answer and evidence.   No ruling upon the demurrer or the evidence was asked of the justice, but the whole case with all the evidence was reported to the law court.

The evidence for the plaintiff disclosed important facts which were known to the plaintiff before filing his bill, but of which he made no mention in the bill, viz:—the forty bonds had never been sold by the company, nor issued in any other way than pledging them for some floating indebtedness,—and that they had been directly pledged by

the company to the plaintiff as security for the debt upon which his judgment was recovered, and that he had deposited them for safe keeping in the defendant bank.

The plaintiff ignored these facts in his bill and made it a simple creditor's bill, basing his claim for equitable relief upon the sole ground that he was a judgment creditor,—and that the forty bonds were the property of his judgment debtor which could not be . . . . taken on execution. R. S., c. 77, § 6, par. X.

It must be apparent from the evidence for the plaintiff above cited that a creditor's bill is not his proper remedy. As to this property he is not a mere creditor and the defendant company is not a mere debtor. He is a pledgee, the holder of the property, with the rights of a pledgee. The defendant company is a pledgeor, with the rights of a pledgeor. A creditor's bill is manifestly not the proper procedure to determine and enforce the rights of either. *Phœnix Ins. Co.* v. *Abbott*, 127 Mass. 558; *Donnell* v. *Portland and Ogdensburg Railroad Co.*, 73 Maine, 567. The bill as framed must be dismissed. The plaintiff apparently has ample remedy under R. S., c. 91, §§ 57 and 58 without any resort to the court.

The plaintiff, at the argument before the law court, apparently realizing that he had mistaken his remedy, asked leave of the law court to reform his bill so that it should be a bill to enforce his rights as pledgee of the property, and suggested that facts could be shown making such a bill necessary to the full enforcement of these rights.

The frequency with which parties in equity cases wait until after issue is joined, the testimony taken, the case heard by a single justice, and then taken by appeal or on report to the law court, before asking for proper amendments,—requires us to caution them against such delays. In equity proceedings the court has ample power to allow proper amendments at any time, but it also has as ample power to refuse them at any time. The whole matter of amendments is within the discretion of the court. It more willingly allows amendments in the early stages of the case, especially before issue joined, and is less and less inclined to allow them as the case progresses. Especially is the court disinclined to allow amendments after the

pleadings have been completed, the evidence taken out, and the case sent to the law court for final determination. It certainly will not allow them as a matter of course, but only when necessary to save some material right, and then usually only upon terms.

It should be borne in mind that the law court is not the equity court of the first instance. The single justice is that court. He has all the powers of the court in equity to hear cases and to make all decrees, final as well as interlocutory. He can make all orders and decrees the law court can make. The design of the Equity Procedure Act of 1881, R S., c. 77, § 6, et seq., was to have all equity causes heard and determined by the single justice, reserving a right of appeal and exceptions to the law court. The provision for reporting cases to the law court after a hearing by a single justice, without ruling or decision by him, was not intended for every case, but for those cases where the solution of the question of law involved would ordinarily dispose of the case. The very purpose of the act was to expedite equity procedure. Appeals and exceptions to interlocutory decrees or orders are not allowed to delay the case, and they cannot be taken to the law court until after final decree in the case (§ 22). To permit a report of the case to the law court to determine one question, then to be sent back and reported again to determine another question, and so on as long as new questions are raised by amendment or otherwise, would defeat the purpose of the act and restore all the evil delays of the old practice which made equity procedure a terror to the suitor. It is well stated in Whitehouse's Equity Practice, § 611, that "equity causes should not be reported to the law court until the pleadings are sufficiently perfected to enable the law court to make a final decision upon the merits. Furthermore, a cause should only be reported for the determination of some doubtful question of law, the decision of which will practically decide the case." Parties reporting an equity case must expect that the law court will ordinarily make a final disposition of that particular case at least, upon the pleadings and evidence presented by the report, without permitting it to go back for further pleadings and evidence. Those should be made right and sufficient before the case is first reported.

In the case now before us, the facts disclosed by the evidence and showing him not entitled to relief under his present bill were well known to the plaintiff before beginning his proceedings. His rights as pledgee were not obscure or doubtful so far as the evidence now shows. The sufficiency of his bill was challenged by the demurrer and his attention thus early called to its character. He did not have the case set for hearing on bill and demurrer, nor did he after the evidence was out ask for any amendment such as was evidently necessary if he was to have any relief in equity. By consenting to report the case without asking for any amendment or any decision by the court of the first instance, he impliedly stated he would abide by the bill and the evidence as they stood. We think he has no cause of complaint if we take him at his implied word and decide this case here, upon the record before us. In the interest of that celerity so much desired in equity procedure, we think the case should not be delayed for the proposed amendment. Whitehouse Eq. Pr. §§ 411-417; Beach's Eq. Pr. §§ 157, et seq., 1 Dan. Ch. Pr. 545 (1st Am. Ed.); Story's Eq. Pl. 268; *Codington* v. *Mott*, 14 N. J. Eq. 430, 82 Am. Dec. 258; *Shields* v. *Barrow*, 17 How. 130; *Whelan* v. *Sullivan*, 102 Mass. 204; *Merrill* v. *Washburn*, 83 Maine, 189; *Loggie* v. *Chandler*, 95 Maine, 220; *Clifford* v. *Coleman*, 13 Blatch. 210.

Nevertheless, the court has the power and does not limit its power to grant an amendment at any stage of a case where it is shown that justice requires it,—that some material right will be lost without it. The court also has the power and does not limit its power to dismiss a bill without prejudice, thus giving the plaintiff an opportunity to assert his claim of right by a new bill.

Though the evidence in this case does not disclose any need of relief in equity, the statutory remedy of the plaintiff being apparently sufficient, yet upon the assurance of the plaintiff that he can show need of relief in equity to fully enforce his rights, we reserve for him the opportunity of making such need apparent in a new bill. This bill is therefore dismissed with costs to the answering defendant only, but without prejudice.

*So ordered.*