ANNIE LAURA ROSE, ADMX. ESTATE OF JACOB W. SILLIKER

*vs.*

GEORGE OSBORNE, JR.

Androscoggin.     Opinion, July 26, 1935.

498

*Benjamin L. Berman,*
*David V. Berman,* for plaintiff.
*Ralph W. Crockett,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J. On appeal by plaintiff from decision of Justice of the Superior Court in equity and on exceptions by defendant to holdings of law in his final decree.

The plaintiff seeks to recover the proceeds of three savings accounts opened by Jacob W. Silliker, now deceased, in three different banks, to wit: (1) Account No. 56623 in the Androscoggin County Savings Bank of Lewiston, Maine, amount $5,481.18; (2) Account No. 122933 in Savings Bank of New London, Connecticut, amount $5,370.72; and (3) Account No. 25798 in Mariners Savings Bank, also of New London, amount $7,301.72, aggregating $18,153.62. The Justice found for the plaintiff as to the first account but for the defendant as to the other two.

A matter of equity practice requires first consideration. An answer under oath having been called for and given, the defense contends it is evidence of the facts therein stated and must be taken as true unless outweighed by a preponderance of evidence.

*Whitehouse's Equity Practice*, Sec. 390, page 418, is quoted as follows:

"When a cause goes to hearing on bill, answer and replication, it is a rule in general chancery practice, when the answer is under oath, that such parts of the answer as are responsive to the bill are evidence equal to the testimony of one credible witness and are therefore to be taken as true unless outweighed by a preponderance of evidence. . . ."

The quotation thus stops, but Mr. Whitehouse also stated:

". . . The preponderance of evidence required by the rule is a preponderance of any kind of legal evidence such as two credible witnesses or one witness and corroborating circumstances or even circumstances or documents alone. Any evidence, no matter what it may be, is sufficient if it outweighs the answer and in determining the weight of such evidence any fact may be taken into consideration which has a bearing upon the question. Thus an answer may so contradict itself as to deprive it of all weight."

In *Gould* v. *Williamson*, 21 Me., 273, the Court stated:

"The evidence, however, may in this, as in other cases, be by way of inference from circumstances, which are sometimes more convincing than direct testimony."

The correct rule is that while facts stated in an answer under oath, when responsive to the bill, are evidence, yet they do not control the decision, if other facts and circumstances, appearing either orally or as written evidence, or as reasonable inferences from facts proven, outweigh the facts stated in the answer.

The determination of the ownership of these bank accounts involves law many times by this Court considered and declared as to what constitutes valid gifts inter vivos and by a voluntary trust. It is claimed that there were gifts inter vivos of the accounts in the Androscoggin County Savings Bank and the Mariners Savings Bank and a voluntary trust of that in the Savings Bank of New London.

The law as to gifts inter vivos is well established in this State. *Allen, Admr.* v. *Polereczky,* 31 Me., 338; *Dole* v. *Lincoln,* 31 Me., 422; *Northrop* v. *Hale,* 73 Me., 66; *Drew* v. *Hagerty,* 81 Me., 231; *Augusta Savings Bank* v. *Fogg, Exr. et al.,* 82 Me., 538; *Norway Savings Bank* v. *Merriam, et als.,* 88 Me., 146; *Fairfield Savings Bank* v. *Small,* 90 Me., 546; *Getchell* v. *Biddeford Savings Bank,* 94 Me., 452; *Hallowell Savings Institution* v. *Titcomb, Exr. et al.,* 96 Me., 62; *Brown* v. *Crafts,* 98 Me., 40; *Staples* v. *Berry,* 110 Me., 32; *Barstow, et als.* v. *Tetlow, Aplt.,* 115 Me., 96; *Maine Savings Bank, In Equity* v. *Welch, et al.,* 121 Me., 49; *Howard, Admr.* v. *Dingley, et als.,* 122 Me., 5; *Garland, Appellant,* 126 Me., 84; *Portland National Bank* v. *Brooks, et al.,* 126 Me., 251; *Saco & Biddeford Savings Institution* v. *Johnston, Admr. et al.,* 133 Me., —. Likewise as to gifts by declaration in trust. *Northwestern Mutual Life Ins. Co.* v. *Collamore et al.,* 100 Me., 578; *Bath Savings Bank* v. *Fogg, et al.,* 101 Me., 188; *Cazallis* v. *Ingraham,* 119 Me., 240; *Springvale National Bank* v. *Ward, et als.,* 122 Me., 227.

An epitome of these decisions as to gifts inter vivos is:

"To constitute a valid gift inter vivos the giver must part with all present and future dominion over the property given.

He can not give it and at the same time retain ownership of it. There must be a delivery to the donee or to someone for the donee and the gift must be absolute and irrevocable without any reference its taking effect at some future period." *Norway Savings Bank* v. *Merriam, et als.*, supra, on page 149.

Delivery to the donee is not enough unless accompanied with an intent to surrender all present and future dominion over the property. The burden to prove the gift is on the donee. When one's intention is to retain the right to use so much of a bank account as he desires during his life, and that the balance upon his decease shall become the property of the donee (although there may be a delivery of the bank book to the donee), no valid gift inter vivos is made. Such is in the nature of a testamentary disposition of property and is legally inoperative because contrary to the Statute of Wills.

With relation to a voluntary trust, there is in such, a gift of the equitable rather than of the legal interest therein. While delivery is a sine qua non in a gift inter vivos, yet not so in a voluntary trust where the property already is in the possession of the cestui que trust.

"The only important difference between a gift and a voluntary trust is, that in the one case the whole title, legal as well as equitable, the thing itself, passes to the donee, while in the other, the actual, beneficial or equitable title passes to the cestui que trust, while the legal title is transferred to a third person or is retained by the person creating it, to hold for the purposes of the trust. But a gift of the equitable or beneficial title must be as complete and effectual in the case of a trust, as is the gift of the thing itself in a gift inter vivos. 'It is just as essential, to establish the trust sought to be set up here, to prove some act on the part of the donor that shall operate to pass the equitable title to the donee, as it is to prove delivery in a gift inter vivos.' *Bath Savings Institution* v. *Hathorn*, 88 Me., page 122." *Norway Savings Bank* v. *Merriam, et als.*, supra, on page 150.

A voluntary trust in personal property may be created by parol. To constitute such a trust it must be perfected and completed; executed, not executory. The passing of the complete equitable title need not be proven by an express statement by the settlor that he declares himself trustee but he must at least do something equivalent to it and use expressions which have that meaning. There must be convincing proof that the fiduciary relation is completely established. *Norway Savings Bank* v. *Merriam*, supra. The entry on a deposit book is not conclusive evidence of an absolute gift of an equitable interest and evidence is admissible to show the intention of the donor and to control the effect of the entry. The material inquiry is as to the donor's actual intention. *Springvale National Bank* v. *Ward, et als.*, 122 Me., 227. Where the word "trustee" appears on a bank book, indicating that it is a trust fund, there is raised the presumption that an irrevocable trust was intended and is sufficient proof of it in the absence of other controlling proof. *Springvale National Bank* v. *Ward, et als.*, supra, on page 229.

"The crucial question where a voluntary trust in the settlor is sought to be established is whether the declaration on which such a trust is sought to be predicated is sufficient. There is no prescribed form for the declaration of a trust; whatever evinces the intention of the party that the property of which he is the legal owner shall beneficially be another's is sufficient. The intention must be plainly manifest, and not derived from loose and equivocal expressions of parties, made at different times and upon different occasions; but any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing." 26 R. C. L., Sec. 19, pages 1182 and 1183.

While the law seems to be well settled in this State difficulty often arises in its application to the facts in a given case. So now, because of differing facts, we are constrained to deal separately with these accounts.

*Account No. 56623 in Androscoggin County Savings Bank*

This account, opened by the deceased in his own name on December 23, 1924, so remained until April 23, 1925, when he signed this memorandum, to wit:

"I, Jacob W. Silliker, having opened with the Androscoggin County Savings Bank an Account No. 56623, now request said Bank to add the name of George H. Osborne, Jr., to my bank book No. 56623, making my said account as follows: a joint deposit account No. 56623 in the names of Jacob W. Silliker and George H. Osborne, Jr. payable to either or the survivor, and I hereby certify that each of the above named persons has a present bona fide legal interest in such account and that such account is not made a joint account for the purpose of transferring title to the same or any part thereof after the decease of either of such persons, nor for the purpose of evading the inheritance tax laws of the State of Maine."

At the same time, the words and figures, "Also George H. Osborne, Jr. 4/23/25" were added to this account. Mr. Silliker then was seventy-six years of age. Seven years later, on December 2, 1932, he died intestate, without issue, but with collateral heirs. These three savings accounts constituted all of his property save note indebtedness against one White of $1,500.00, which in the inventory of his estate was valued $500.00. At the time of his death, he had lived in the home of the defendant, his nephew, approximately eight years, except for short periods when he had visited elsewhere. The evidence shows he had the kindliest of feelings toward the defendant and his home was with him. No doubt he desired that the defendant sometime should receive title to all of his property, including these bank accounts, but the vital question is, when. He delivered this bank book into the possession of the defendant and it remained with him most of the time until Mr. Silliker's death. It was usually kept with other bank books in a wooden box under the bed of the defendant in the house occupied by both, where Mr. Silliker had as much access to it as the defendant. On one occasion, without his knowledge, Mr. Silliker obtained it, by hand of the defendant's daughter, as she testified, for the purpose of identifying him when crossing the boundary line on a trip to

Canada. Upon his return, he left it at the Bank, told her what he had done with it, and said that her father should get it "the minute his breath left his body." This incident sheds light on Mr. Silliker's intent and his understanding as to the then ownership of the account. If he had previously parted wholly with dominion over and right of control of this book and it was the sole property of the defendant, it would have been proper and the natural thing for him to have gotten the consent of the defendant before he took it, even if he wanted it for identification purposes only; and then, upon coming home, to have returned it to the place from which he had taken it, or at least to have delivered it back into the possession of Mr. Osborne rather than have left it at the Bank. That he did otherwise, (no doubt expecting it to remain at the Bank for the rest of his life) not only demonstrated his claimed right to take it for identification purposes but as well a believed right, retained by him, to control the book and have dominion over it during his life.

Furthermore, subsequently to the addition of the defendant's name to the account and the signing of the above memorandum, he made two withdrawals from it on his own acount, viz.: $1,001.39 on November 1, 1930, and $500.00 on June 1, 1931. It does not appear that these withdrawals were known to the defendant, or their purposes, which were to make loans to one White. Notes for these loans were made payable to Mr. Silliker alone and constituted the indebtedness above referred to as a part of the inventory of his estate. Unless this old gentleman were dishonestly inclined, would he have withdrawn money belonging to another without the consent or even knowledge of the owner? His acts militate strongly against a valid gift inter vivos.

True, there was evidence from witnesses that Mr. Silliker said from time to time that he had given this book, as well as others, to the defendant, and they testified that he said he had made "a present" of them to the defendant. The words themselves, while important (if the witnesses remember accurately the actual words spoken), do not necessarily indicate gifts inter vivos. One may be said to give, whether the "gift" is to take effect in presenti or in futuro. Likewise of "a present." But to constitute a valid gift inter vivos the "giver must part with all present and future dominion over the property given."

In an independent proceeding before the Probate Court, this defendant testified: "I kept the bank books for him." Later, when questioned by his attorney, he sought to correct himself. To us it appears that while the defendant had possession of the books most of the time, he kept them for both Mr. Silliker and himself.

Also before the Probate Court, (with reference to the leaving of this book in the Bank upon Mr. Silliker's return from Canada) the defendant testified that Mr. Silliker "said at the time of his death for me to go there and draw that money when he died."

Thus, we discern quite clearly from the evidence of the defendant himself proof of the right of Mr. Silliker to have dominion over this account as long as he lived.

If one would arrive at the truth herein by the test of probability, it would seem most improbable, that this man, advanced in years and beyond labor, would divest himself of all of his property, reduce himself from comparative affluence to poverty, without retention of any of it for his future needs. It is not impossible but extremely improbable. It is not claimed the defendant in any way obligated himself to support and maintain the old gentleman.

The defendant has failed to prove a valid gift inter vivos of this account. The decision of the Justice below that the plaintiff was entitled to this account was well founded in law and fact.

*Account No.* 122933, *Savings Bank of New London, Connecticut*

This account, opened by Mr. Silliker in his own name on July 14, 1919, so remained until June 21, 1929, when he and the defendant were on a trip from Maine to Connecticut, no doubt for the purpose of giving attention to this bank account as well as to one in the Mariners Savings Bank of New London.

The transactions with relation to these Connecticut bank accounts had origin and perfection in the State of Connecticut and so their effect is governed by Connecticut law. However, inasmuch as the record does not disclose that the law there as to voluntary trusts and gifts inter vivos is different from that in Maine, the presumption is that it is the same. The common law of another state or country is presumed to be the same as that of the forum. *Winslow* v. *Troy,* 97 Me., 130; *Emerson Company* v. *Proctor,* 97

Me., 360; *Peabody* v. *Maguire*, 79 Me., 572, 589; *Carpenter* v. *Grand Trunk R. R. Co.*, 72 Me., 388, 390; *McKenzie* v. *Wardwell*, 61 Me., 136, 139; *Whidden* v. *Seelye*, 40 Me., 247, 253; *Tllexan* v. *Winslow*, 43 Me., 186; *Boothby* v. *Hathaway*, 20 Me., 251, 254.

On the said 21st day of June, 1929, Mr. Silliker transferred Account No. 122933 in the Savings Bank of New London to "Jacob Silliker, Tr. George H. Osborne Jr." He designated it "a voluntary trust."

Subsequently nothing was withdrawn from said account.

"In order for such a trust" (meaning a voluntary trust) "to be valid and enforceable, it must always appear from the written or oral declaration, from the nature of the transaction, the relation of the parties and the purposes of the gift, that the fiduciary relation is completely established." *Norway Savings Bank* v. *Merriam, et als.*, supra, on page 151.

In the absence of other satisfying evidence, we must rely in the main on the writing itself. Over his signature he called it "a voluntary trust." He designated himself alone as trustee. Although he did not declare the defendant the cestui que trust, he can not be said to have any other status. Enough appears completely to establish the fiduciary relation. Consideration of the nature of the transaction, the relation of the parties, the intended purposes of the gift in trust, and the reasons therefor all accords with and substantiates the claim that Mr. Silliker intended to and did establish a voluntary trust. No provision was made for the withdrawal of the funds by either, nor for survivorship. The settlor sufficiently indicated his intention to transfer immediately the whole of the actual, beneficial and equitable title without retention of any right in himself save the trusteeship. The Justice below erred not in finding as a matter of law and fact creation of a legal voluntary trust.

*Account No. 25798 in Mariners Savings Bank of New London*

This account, opened by Mr. Silliker in his own name on August 19, 1912, was not changed until June, 1929, when, as above stated, he and the defendant were in New London. Then this undated memorandum was signed:

"Acct. No. 25798

"Whereas, at our request, the Mariners Savings Bank of New London, will open an account with

Jacob Silliker

George H. Osborne, Jr.

and the survivor of them, it is hereby agreed by all parties that the survivor shall have the right to draw the balance, and that during the life of both, either may draw on such account.

Jacob Silliker

George H. Osborne, Jr."

It is claimed that a gift inter vivos was made of this account and the Court below so held. With this conclusion we do not agree. Both Mr. Silliker and the defendant signed the memorandum in which it was distinctly stated that either might draw on the account. That is inconsistent with the creation of a gift inter vivos. Mr. Silliker retained the dominion and control and by his signature the defendant acknowledged that right, even to the withdrawal of the whole account. It would seem that no language could be plainer to indicate that Mr. Silliker had not parted "with all present and future dominion over the property." The evidence produces no proof of a gift inter vivos of this account.

### Exceptions

The first exception was to the holding that the memorandum dated April 23, 1925, and the addition of the defendant's name and the words "payable to either or the survivor," (referring to the account in the Androscoggin County Savings Bank) did not as a matter of law create "a joint estate in said deposit which passed to the survivor. . . ." At the time this memorandum was made, by statute, to wit, Chapter 144, Sec. 25, P. L. 1923 (repealed as to the written statement in 1929), it was provided that:

"No deposit account payable to two or more persons or the survivor or survivors shall hereafter be opened in any bank, savings bank or trust company, . . . unless and until the person opening such account . . . shall file with such bank or as-

sociation a written statement that each of such depositors . . . has a present bona fide legal interest therein, and that such account is not opened . . . for the purpose of transferring title · to the same or any part thereof after the decease of any of the joint depositors . . . nor for the purpose of evading the inheritance tax laws of this State."

This provision appears in an Act revising and consolidating the banking laws of the State. This particular section was enacted for the benefit of the savings institutions to the end that an institution might safely pay "to either of said persons whether the other be living or not, or to the legal representative of the survivor of said persons." The amount in said institution "and the receipt or acquitance of the person to whom said payment . . . be made . . . be a valid and sufficient release and discharge . . . for any payment so made." The statute first furnished protection to the bank, and then as a help to that end made the filing of the written statement compulsory. The Legislature, in our judgment, did not intend to enact a law that as between the depositors themselves should in and of itself determine their ownership in an account.

While the decision in *Garland, Appellant*, supra, 126 Me., 84, dealt not with facts that arose while this statute was in effect, yet, on pages 97 and 98, it contains this significant statement:

"If the creation of a joint interest in bank deposits with the right of survivorship is desirable, the Legislature has power by its fiat to authorize it. The amendment to sec. 25, chap. 52, under chap. 144, P. L. 1923, however, indicates that the revisers of our banking laws were of the opinion that the adoption of such a rule would not only open wide the door to fraudulent claims, but also encourage the evasion of our tax laws and the circumvention of the Statute of Wills."

Chief Justice Wilson in his opinion in the Garland case also said:

". . . Nor can we adopt the view that by a mere agreement between the parties . . . property owned severally in common can be changed to a joint tenancy, or where the right to the full use during life is reserved, a right of survivorship can be created without contravening the Statute of Wills."

The essential elements of a joint tenancy, viz.: unity of time, unity of title, unity of interest, and unity of possession, are not here present.

"The reservation of the right of absolute control during his lifetime, and the exercise of that right by withdrawals for his own uses, not only contravenes any gift inter vivos, but without other evidence than the bank's record, is inconsistent with an intent to create a joint tenancy. . . . Without evidence of other intent, it is more consistent with a convenient arrangement for withdrawals during the joint lives of the parties and an intention to make a testamentary disposition of the balance, which being in violation of the Statute of Wills can not be upheld. *Staples* v. *Berry*, 110 Me., 36." *Garland, Appellant*, 126 Me., 84, 94.

The second exception is to the finding of the presiding Justice, "that the adding of the name of George H. Osborne, Jr., and the words 'payable to either or the survivor' to the Androscoggin County Savings Bank deposit book, the signing and delivery of said statement dated April 23, 1925, and the delivery of said deposit book by the said Jacob W. Silliker into the possession of said George H. Osborne, Jr., thereafter, did not in and of itself constitute a gift inter vivos from said Silliker to said Osborne." In this there is no exceptionable error for reasons already stated in this opinion. Whether or not there was a valid gift inter vivos depended upon all of the material evidence in the case, oral as well as written. If that evidence had shown that Mr. Silliker had given the account in the Androscoggin County Savings Bank to the defendant absolutely and irrevocably and had parted with all present and future dominion over it, then there would have been a valid gift inter vivos; otherwise, not.

The plaintiff's appeal is sustained only as to Account No. 25798 in the Mariners Savings Bank, and the defendant's exceptions are overruled.

*Decree in accordance with this opinion.*