LYNWOOD E. HAND, ADMR. D.B.N.
ESTATE HATTIE S. TRACY
*vs.*
C. DANA NICKERSON

Aroostook.   Opinion, March 18, 1953.

*Asa H. Roach,* for plaintiff.

*James P. Archibald,* for defendant.

SITTING: MURCHIE, C. J., MERRILL, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, JJ.

MERRILL, J. On report. This case was reported to this court by a Justice of the Superior Court upon the following certificate:

> "This case is by agreement of the parties *herby* reported to the Law Court in the most comprehensive manner, to embrace every question of law and fact which the case hereby reported involves and to submit the whole controversy obtaining for final decision."

The tendency to report cases to this court which present no questions of law of sufficient importance or doubt to justify the same makes it necessary for us to re-examine the circumstances and again state the rules under which cases may be reported to this court sitting as a Law Court.

No case should be reported to this court unless our decision thereof in at least one alternative would enable us to finally dispose of the case. See *Cheney* v. *Richards,* 130 Me. 288, 291; *Harding* v. *Harding,* 130 Me. 515. This rule is general but it has special significance with respect to reporting questions of law on interlocutory matters. See *Shaw* v. *Slate Co.,* 96 Me. 41, 44, with respect to equity cases, and *Casualty Co.* v. *Granite Co.,* 102 Me. 148, with respect to actions at law. In the latter case, in a decision discharg-

ing the report, we said with respect to reporting an inter-locutory motion to this court without a stipulation for final disposition:

"Cases cannot be thus sent to the Law Court piece meal, one question at a time, the case to be re-turned again to the Law Court when and as often as another question may arise. *Monaghan* v. *Long-fellow*, 82 Maine, 419. As said by the court in *State* v. *Brown*, 75 Maine, 456. 'If the case be sent to us once in this way, there is no reason why it could not come up in the same way over and over again upon motions possible to be made.' That the parties agree to such a course does not make it lawful. It would transform the Law Court into an advisory board for the direction of the business of the court at nisi prius, a function the Law Court cannot assume. *Noble* v. *Boston*, 111 Mass. 485. All interlocutory motions and other interlocutory matters should be disposed of at nisi prius, saving to the parties their rights of exception or appeal, if any. They should not be sent to the Law Court even upon report at the request of the parties, except at such stage of the case, or upon such stipulation, that a decision of the question may, in one alternative at least, dispose of the case itself. The legislature in constituting the Law Court and defining its jurisdiction (R.S., ch. 79, sec. 46,) (now R.S., (1944) c. 91, § 14) did not intend it to be used as a substitute for presiding Justices nor to relieve Judges in the trial courts from the duty of deciding, as they arise, mere interlocutory ques-tions incident to the progress of the trial or the case.

As well might motions for the appointment of audi-tors or surveyors, or questions of the admissibility of evidence, or requests for instructions, etc., be sent to the Law Court for original decision. It is evident, that even by agreement of parties, a trial should not be interrupted or postponed in order to obtain the opinion of the Law Court upon such questions, at least unless the parties stipulate that

the opinion in some alternative shall practically end the case. *Noble* v. *Boston,* 111 Mass. 485."

The Law Court sits as a *court of law.* It is the exception, not the rule, when this court sitting as the Law Court passes upon and determines questions of fact. The unrestrained power of justices at nisi prius, either with the consent or at the request of the parties, to report cases to this court for determination is inconsistent with the purposes for which this court was established and the duties and powers with which it has been invested by statute.

"This Law Court has jurisdiction to determine *causes in equity certified on report* only when the presiding justice *is of the opinion,* and *so certifies,* that a question of law is involved *of sufficient importance or doubt to justify the same* and the parties agree thereto." (Emphasis ours.) R. S. (1944), Chap. 95, Sec. 24, *Fenn* v. *Fenn et al.,* 130 Me. 520.

The authority of this court to determine cases *at law* on report is conferred by R. S. (1944), Chap. 91, Sec. 14 and is confined to cases presenting *"questions of law."* It is to be noted that Section 14 of Chapter 91 does not *specifically* set forth the limitations contained in the statute relative to reporting a cause in equity, to wit, that the same must in the opinion of the presiding justice involve *questions of law of sufficient importance or doubt to justify reporting the same* or that *the parties must agree to the report.* However, it has been the *almost universal practice* to include a declaration to that effect in certificates reporting *cases at law.* While such a declaration in a certificate reporting a *case at law* is not strictly necessary, such a case should not be reported to this court, even when the parties request that it be done, except under those conditions.

This court has held that an action at law cannot be reported unless the parties agree thereto. We said in *Baker* v. *Johnson,* 41 Me. 15, 18:

"Questions of law may also be raised for the law court on reports of evidence, as well as on exceptions or agreed statements of facts. But it is not competent for a Judge presiding at *Nisi Prius* to *order* the evidence to be reported or the parties to agree upon a statement of facts. If the parties do not consent to raise questions of law by a report of the evidence, or by agreed statement of facts, it is the duty of the presiding Judge to hear the evidence when addressed to the Court, or cause it to be produced before the jury, when properly addressed to a jury, and to make such rulings, orders, or decrees thereon, as in his opinion the law of the case requires. To these rulings, orders or decrees, in matters of law, any party who is thereby aggrieved, may allege exceptions, which exceptions, when properly authenticated, may, after all preliminary and interlocutory matters have been disposed of, be entered upon the docket of the law court for final determination."

Even as the requirement that the parties agree to a report of a case at law is implied, in like manner, *it is also implied* that the questions of law involved must be of *sufficient importance or doubt to justify reporting the same.* Otherwise, any case could be reported to the Law Court for decision, because the decision of every case involves a question of law and its application to the existing facts. When this court has heretofore stated in opinions that no question of law was or that only questions of fact were presented by the report under consideration, it was with the implication that such questions of law as were involved in the case were not of sufficient importance or doubt to justify reporting the same. See *Zoidis* v. *Breen et al.,* 132 Me. 489, *Associated Fish Products* v. *Hussey,* 145 Me. 388, *Bartlett* v. *Newton,* 147 Me. 185.

In cases reported to the Law Court on the evidence because of questions of law involved, this court may also pass upon the facts. *Dansky* v. *Kotimaki,* 125 Me. 72. This

power of the court to pass upon the facts of a case, however, is incidental to its jurisdiction to pass upon the questions of law properly presented by the report. Unless questions of law of sufficient importance or doubt to justify reporting the case to the Law Court are presented, this court ordinarily will not assume to pass upon controverted questions of fact. However, in exceptional cases, this court has sometimes regarded it to be its duty to finally dispose of litigation without compelling the parties to incur further expense and has finally disposed of a case reported to it when no controverted questions of law were presented. See *Lord, Berry & Walker* v. *Massachusetts Ins. Co.,* 133 Me. 335.

It is very questionable whether this case presents any question of law of sufficient importance or doubt to justify reporting the same to us. We could well discharge the report upon the authority of *Zoidis* v. *Breen et al., Associated Fish Products* v. *Hussey,* and *Bartlett* v. *Newton, supra.* Nevertheless, in this particular case we regard it to be our duty to finally dispose of this litigation without compelling the parties to incur further expense, and we do so upon the authority of *Lord, Berry & Walker* v. *Massachusetts Ins. Co., supra.* However, as stated in *Dansky* v. *Kotimaki, supra,* this court in so doing "does not deem it necessary to include in its opinion an analysis of the testimony. Detailed reasons for reaching conclusions of fact (herein would) have no value as precedents and uselessly encumber the reports." As in that case we shall state our reasons for conclusions only in outline.

This was an action at law brought by the plaintiff as administrator d.b.n. of the estate of Hattie S. Tracy against C. Dana Nickerson. The action was brought to recover the proceeds of a savings deposit in the First National Bank of Houlton withdrawn by the defendant. The deposit, at the decease of Miss Tracy, stood in the name of "Tracy, Hattie

S. or C. Dana Nickerson," "payable to either or survivor." It was withdrawn by the defendant, C. Dana Nickerson, the day after Miss Tracy's death. It then amounted to $2,723.44. This account was opened December 15, 1947 when a prior deposit, which had been in the names of "Tracy, Hattie S. and Angie S. Manson, sister" "payable to either or survivor," was withdrawn on an order signed by Hattie S. Tracy, the then survivor of herself and sister. The proceeds of said former deposit were immediately deposited in a new account, "the deposit in question," in the names of "Tracy, Hattie S. or C. Dana Nickerson," "payable to either or survivor" of them. There was also on file in the First National Bank of Houlton a declaration signed by the defendant and Miss Tracy dated December 15, 1947 stating that this bank account standing in their names and payable to either or the survivor was to become the sole and absolute property of the survivor.

As above stated, the defendant withdrew this deposit the day after Miss Tracy's death. He did so claiming to be the absolute owner of this new account. He did not assert this claim by virtue of the survivorship agreement or as the survivor. He claimed that Miss Tracy made an absolute and irrevocable gift of the original deposit to him in her lifetime. He further claimed that before the new account was opened Miss Tracy had by her gift to him divested herself of all right, title and interest in the former deposit, and that the new deposit was a deposit of his own funds and that he was the sole owner thereof.

After the withdrawal of the deposit the defendant paid therefrom the expenses of the last sickness and funeral of, and the cost of a gravestone for Miss Tracy various sums amounting to $1,114.65. He claimed that if it should be determined that he was not entitled to the bank deposit, he should be reimbursed for these expenditures made for and in behalf of the estate.

Unless the decedent, Miss Tracy, made a valid and irrevocable gift *inter vivos* of the bank deposit formerly standing in her name to the defendant, this case is governed by *Garland, Appellant,* 126 Me. 84, and the long line of authorities cited therein, and the deposit in question belonged to and formed a part of the estate of Miss Tracy. Nor does the declaration filed with the bank affect this result. It was insufficient to create a survivorship under R. S. (1944), Chap. 55, Sec. 36 as amended. The parties were neither husband and wife nor parent and child as required by said statute. The defendant was a nephew of Miss Tracy.

The burden of proof is upon the defendant to establish the gift which is the foundation of his claim. *Rose* v. *Osborne,* 133 Me. 497, 501.

Upon a careful examination of the admissible testimony in the record, we are unable to find that a valid gift of the original deposit was made by Miss Tracy to the defendant.

No useful purpose would be served by a restatement of the legal principles governing gifts of this nature or of the authorities declaring the same. The principles are well stated in *Rose* v. *Osborne, supra,* which is replete with citations of the many relevant and governing opinions of this court respecting the same.

The deposit in question belonged to Miss Tracy. It formed a part of her estate. The defendant having withdrawn the same after her death is accountable to the administrator d.b.n. therefor in this action.

At the argument it was conceded by counsel for the plaintiff that if the defendant was accountable for the proceeds of the deposit, he should be allowed his claim of $1,114.65 for the expenditures that he made therefrom for the benefit of the estate. We make such allowance. In doing so, however, we do not even intimate our approval of the procedure under which the defendant sought allowance thereof.

However, "Matters of technical pleading will, where a case is submitted on report of the evidence, be regarded, unless the contrary appears, as having been waived." *Foley, Malloy* v. *Farnham Co.,* 135 Me. 29, 33. See also *Pillsbury* v. *Brown,* 82 Me. 450; *Hurd* v. *Chase,* 100 Me. 561, 564.

In accordance with the terms of the report we find for the plaintiff in the sum of $1,608.79 with interest thereon from November 23, 1951, being the date of the writ. The entry will be,

> *Judgment for the plaintiff for $1,608.79 with interest thereon from the date of the writ to the date of final judgment, the same to be computed and added by the Clerk below.*