**William H. LINDSEY, Petitioner,**

v.

**COUNTY OF CUMBERLAND and Charles Sharpe, Sheriff, Respondents.**

Supreme Judicial Court of Maine.

June 2, 1971.

Robert E. Mittel, Peter S. VanVoast, Portland, for plaintiff.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WERNICK, Justice.

## ON REPORT.

This petition for habeas corpus [1] was initiated before a single Justice of the Supreme Judicial Court sitting in the Superior Court. It seeks release from an alleged illegal confinement of the petitioner in the Cumberland County Jail. The single Justice enlarged petitioner from jail on his personal recognizance pending final decision of the case.

None of the respondents in the case entered an appearance. Petitioner moved for a judgment by default. Upon the motion the presiding Justice deemed it necessary that, in view of the nature of the proceeding as habeas corpus, petitioner should present evidence in support of his contention of the illegality of his confinement.[2] Evidence was introduced. After hearing the evidence, the presiding Justice concluded that there had been raised before him questions of law of sufficient importance and doubt, and decision on which "would in at least one alternative finally dispose of the action", to warrant report of the case to the Law Court under Rule 72(a) M.R.C.P.

Petitioner, the only party appearing in the case, agreed to the report. The presiding Justice ordered the case reported to this Court "upon the Petition for Habeas Corpus, the Motion for Default Judgment, the Order for Report and the Transcript of the Hearing * * *", that this Court "render such decision as the rights of the parties require." [3]

A preliminary issue arises as to whether 72(a) M.R.C.P. intends to authorize report of a case in which *none* of the adverse parties has appeared.

Rule 72(a) M.R.C.P. reads:

"*(a) Report by Agreement of Important or Doubtful Questions.* The court may, where all parties appearing so agree, report any action to the Law Court if it is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same, provided that the decision thereof would in at least one alternative finally dispose of the action."

The Reporter's Notes as to Rule 72, discussing the prior practice and dealing with the objective of the Rule, state:

"At present a report in equity is authorized only when the parties so agree, and the necessity for agreement is implied as to actions at law although not spelled out in the statute. Hand, Adm'r v. Nickerson, 148 Me. 465, 95 A.2d 813 (1953). The language 'all parties appearing' in Rule 72(a) * * * changes the result of Fenn v. Fenn, 130 Me. 520, 155 A. 803 (1931), which held a report improper where certain of the defendants defaulted and did not join in the agreement." Field, McKusick and Wroth, Maine Civil Practice (Second Edition) (p. 136)

---

1. The petition appears to have been brought pursuant to 14 M.R.S.A. §§ 5513 et seq.

2. The presiding Justice considered as a strong analogy to guide him in the present situation our prior practice in equity in which, after a bill in equity had been taken pro confesso for want of appearance, the merits of the bill were often required to be proved when there was doubt as to the applicable law or as to the truth of factual allegations.

3. We feel it necessary to comment upon the failure of those who had the responsibility to authorize appearance by counsel in the present case to discharge their responsibility and retain counsel. In the present proceeding attack is made upon the constitutionality of statutes which govern the conduct of public officials. Our judicial system relies heavily upon a genuine adversary approach to problems to assist in the search for truth and the attainment of justice. When, as here, the Court is deprived of the benefits of an adversary development of the case, because the County, named as a party respondent, declines to provide counsel to deal with important issues, the administration of justice is jeopardized and an unduly heavy burden is unnecessarily imposed upon the Court.

The Reporter's Notes thus focus only upon the situation in which at least one of the adverse parties has appeared, even if others have failed to appear. Hence, the Reporter's Notes omit consideration of the present situation.

In Hitch v. Hitch, Me., 261 A.2d 858 (1970) this Court was confronted with circumstances in which all of the *named* adverse parties had appeared but other persons deemed indispensable parties were unnamed as parties. The Court discharged the report "since there was a non-joinder of indispensable parties in the trial court". (p. 860) The Court further stated:

"We intimate no opinion as to the propriety of a report *in an action to construe a will in the circumstances of this case*, even after the proper joinder of unknown possible parties, in the absence of the appointment of a guardian ad litem under Rule 17(b) M.R.C.P., and the joinder of said guardian in the request to report." (pp. 859, 860) (emphasis supplied)

Hitch v. Hitch, supra, dealt, therefore, with the special situation of the construction of a will in which

"absence of proper notice and the failure to join as parties thereto all persons unknown who may have an interest in the intestate property of a decedent,"

was viewed

"as improper practice favorable to possible collusive judgments." (p. 859)

In the present case, however, it appears of record that all indispensable parties, adversary to petitioner, have been joined as respondents. Under such circumstances, we regard the decision and caveat in Hitch v. Hitch, supra, as inapplicable.

When all of the persons who are indispensable parties to a proceeding have been named as adverse parties and duly served and all have failed to appear, judgment would, ordinarily, be taken by default. In the present situation because of the importance of the issues in terms of public policy and the nature of the relief demanded by which a person would be ordered discharged from incarceration in jail, the presiding Justice concluded that a judgment of default should be avoided until evidence was produced which would be shown to be sufficient in law to warrant the conclusion that petitioner was being illegally restrained of his liberty. After the evidence had been adduced, the presiding Justice was of opinion, and petitioner agreed, that there was sufficient doubt of the law and that the issues were of sufficient importance to justify decision by the Law Court. Hence, the case was reported by agreement of petitioner, the *only* party to the proceeding *who had appeared.*

██ Under these circumstances—in which all indispensable adversary parties had been joined, and a default judgment against them might properly be entered for their want of appearance except that public policy induced the presiding Justice to withhold his decision by default and inquire into the merits—we decide that the intent of Rule 72(a) M.R.C.P. is shown by a literal reading of the language. The report of a case is authorized "where all parties *appearing* so agree". (emphasis supplied) In the present situation, petitioner was the only party who had appeared and petitioner agreed to the report of the case. *All parties appearing* had, therefore, agreed to the report. The case is properly before us under Rule 72(a) M.R.C.P.

The evidence reveals that the petitioner was ordered by a Judge of the Ninth District Court, as an incident of a judgment of divorce rendered in favor of his wife, as of November 15, 1967, to pay $50.00 per week for support of his minor children. Subsequently, upon motion by the former wife of the petitioner alleging arrearages and after notice and hearing on the motion, at which hearing petitioner had appeared and was heard, the Court adjudicated that there was outstanding an obligation of petitioner to pay for support of his children the sum of $500.00 and that petitioner

had failed to satisfy this outstanding obligation. The record discloses, however, nothing which suggests that the Court at the hearing was concerned about *the reasons for the non-payment* of the obligation and, specifically, whether petitioner had failed to pay because he was honestly without property adequate to satisfy, in whole or substantial part, an obligation in the amount of $500.00. The record is further silent as to whether petitioner was, in fact, an honest indigent at the time of the hearing on the motion to adjudicate the amount of the arrearage.

In this state of the record we conclude that when the Judge of the Ninth District Court on December 13, 1968, after the hearing above described, ordered execution running against the body of the petitioner to issue forthwith for an adjudicated obligation to pay money in the amount of $500.00, such "capias" execution had been ordered *merely* because petitioner had failed to pay and *regardless of the reasons for non-payment*. We reach this conclusion (1) because 19 M.R.S.A. § 722 under which the Court purported to be acting treats mere non-payment of an adjudicated obligation as sufficient to authorize a "capias" execution to be issued and (2) the Court order itself referred only to the fact of non-payment and refrained from amplifying as to whether non-payment had resulted from a deliberate refusal of the petitioner to pay even though he was able to pay or the dishonesty of petitioner in making assets unavailable to be reached in payment of the obligation.

Under date of December 16, 1968 a "capias" execution was issued by the Clerk of the Ninth District Court and on January 4, 1969 petitioner was summarily arrested under the ostensibly legal command of the capias execution and incarcerated in the Cumberland County jail by the respondent, Sheriff. At the time of his incarceration petitioner had as property only cash of an amount less than $100.00 and the clothing he was wearing; and there is absent any indication that he had dishonestly handled his assets so as to conceal property or otherwise make it unavailable.

Petitioner remained in jail for approximately eight months until counsel for his former wife wrote to the Sheriff's Department of Cumberland County a letter under date of August 12, 1969 reading:

"Gentlemen:

"This will inform you that William Lindsey has satisfied capias execution * * * dated September 16, 1968 for which he was incarcerated.

"He may be released from jail if he satisfies your office on the payment of board." [4]

Because the amount due for board covering the time petitioner spent in jail was alleged by the Sheriff's Department to be $414.75, an amount which petitioner was honestly too poor to pay whether in whole or substantial part, petitioner was held in jail by respondent, Sheriff of Cumberland County,[5] until he was ultimately enlarged on his personal recognizance by the presiding Justice as an incident of the present petition for habeas corpus.

Upon these facts, the disposition of this case flows from the controlling effect of our decision in Yoder v. Cumberland County et al., Me., 278 A.2d 379 (1971). In *Yoder* we held that provisions of 19 M.R.S.A. § 722 which authorize summary arrest and imprisonment of a person merely because of his non-payment of an adjudicated obligation to pay money—(under 19 M.R.S.A. § 722, and even though the money is deemed to be for "family support"), —without prior hearing as to the reasons

---

4. The evidence reveals that a sister of petitioner had finally been able to provide sufficient money to satisfy the amount of the obligation which "creditor" had agreed to accept in full payment.

5. Under 19 M.R.S.A. § 722 the Sheriff is subjected to a statutory obligation to deny release to one imprisoned until he has made "payment of the * * * expenses of his commitment and support * * *."

for non-payment, are null and void because in contravention of the procedural due process mandate of the Fourteenth Amendment of the Constitution of the United States; and that, therefore, a capias execution issued under authority of 19 M.R.S.A. § 722 under which a person is summarily arrested and imprisoned is likewise a nullity.

 In the present case the capias execution was issued by the Court under the authority of 19 M.R.S.A. § 722 solely upon the proof of non-payment of the adjudicated obligation and without a prior hearing as to the reasons for non-payment. The arrest and imprisonment of the petitioner under the capias execution was likewise summary, without prior hearing as to the reasons for non-payment. Furthermore, petitioner was incarcerated at a time when he was unable because of his honest indigency in light of the amount of the obligation, to satisfy it whether in whole or in substantial part. Finally, there has never been a showing that at any time prior to his incarceration, and as far back as the date of the hearing at which the outstanding obligation of $500.00 was adjudicated, had the financial condition of the petitioner been other than that of a person honestly too poor to pay, whether in whole or in substantial part, a "support" arrearage in the amount of $500.00.

Under the controlling authority of *Yoder*, supra, the capias execution by virtue of which petitioner was arrested and incarcerated was, therefore, a nullity. Once the capias execution was invalidated, the legality of the imprisonment of petitioner effected under it was likewise nullified.

Similarly, the illegality of the incarceration invalidates the claim against petitioner for board arising from the unlawful imprisonment. The lawfulness of a charge for board incident to an unconstitutional incarceration in jail must be deemed vitiated when the confinement generating the charge for board is unlawfully imposed. The continued incarceration of pe-

titioner for failure to pay the unlawful charge for board in jail is an illegal restraint of his liberty. Petitioner is entitled to his freedom.

The entry must be:

Petitioner discharged.