**STATE of Maine**

**v.**

**John E. FOLEY.**

Supreme Judicial Court of Maine.

Nov. 15, 1976.

David M. Cox, Dist. Atty., Paul W. Chaiken, Eugene W. Beaulieu, Asst. Dist. Attys., Bangor, for plaintiff.

Blanchard & Blanchard by Albert C. Blanchard, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Charged with having operated a motor vehicle while under the influence of intoxicating liquor (29 M.R.S.A. § 1312–A), defendant John E. Foley was on trial before a jury when, on July 17, 1975, the presiding Justice declared a mistrial. Then, on July 30, all parties agreeing and having stipulated the facts, the presiding Justice ordered the case reported (Rule 37A M.R. Crim.P.) for this Court's decision of issues

* Weatherbee, J. sat at argument but died before the opinion was adopted.

pertaining to Maine's so-called "implied consent" law (29 M.R.S.A. § 1312).

The facts are these.

After arresting defendant for operating a motor vehicle while under the influence of intoxicating liquor, the police invoked the "implied consent" law to have defendant submit to a test to determine the alcholic content of his blood. Since defendant suffered from emphysema, defendant would not submit to a test of his breath but agreed to submit to a test of a sample of his blood. The police thereupon took defendant to a hospital to have the test by blood sample administered. Before administering the test the hospital demanded that defendant sign a form stating:

"I . . . agree to release the . . . Hospital from any liability whatsoever which may result from the taking of . . . [the] blood sample."

Defendant refused to sign such a release, and no test by blood sample was made.

The fundamental question to which the instant report seems directed is whether in the processing of their own invocation of the "implied consent" law, government officials subjected defendant to illegalities which effectively deprived him of evidence potentially favorable to him and thus violated defendant's constitutional right to due process of law.

We find that we cannot consider this issue but must discharge the report.

▆▆▆▆ The "report" procedure is a "recognized departure" from the usual methodology of appellate review and should "be employed with care and caution." *State v. Bailey,* Me., 286 A.2d 603 (1972); see also: *Hand v. Nickerson,* 148 Me. 465, 95 A.2d 813 (1953). Moreover, since an

" . . . unrestrained power of justices at nisi prius, . . . to report cases" could be

" . . . inconsistent with the purposes for which . . . [the Law Court] was established and the duties and powers with which it has been invested by statute", (p. 468 of 148 Me., p. 815 of 95 A.2d.)

the Law Court retains power to make its own independent determination whether in all the circumstances of a given case its decision "on report" would be consistent with the Court's basic functions as an appellate tribunal. See: *Hand v. Nickerson,* supra, pp. 468, 469, 95 A.2d 813.

Thus, we have discharged a report when, notwithstanding the certification of the Superior Court Justice that the question reported was of sufficient importance, or doubt, to justify the report of the case, our own judgment, independently exercised, was to the contrary. See: *Hand v. Nickerson,* supra; *Huot v. Gendron,* Me., 284 A.2d 899 (1971).

Similarly, we have discharged a report when the facts in the agreed statement were

"insufficient to allow an intelligent decision of the problem presented . . .." *State v. Colburn,* 134 Me. 494, 182 A. 210 (1936);

cf. also: *Blackwell v. State,* Me., 311 A.2d 536 (1973).

In *State v. Michaud,* Me., 244 A.2d 801 (1968), we discharged a report in a criminal proceeding which had been ordered after the granting of a mistrial. We there noted that the "report" procedure, as available in a criminal prosecution, was designed primarily for the appellate review of questions usually addressed before trial, such as motions to suppress evidence for potential use at trial or motions testing the legal sufficiency of a criminal complaint or indictment. Specifically as to the mistrial

context of the report in *Michaud,* we declared:

"Mistrials should not be granted except upon urgent, manifest or imperious necessity in the furtherance of justice"

and we stated, further:

"Defendant's mere consent should not be the measuring rod for the exercise of the court's discretion in granting a mistrial." [1]   (p. 802)

Thus, once a jury trial has begun only the most compelling reasons should induce the presiding Justice to interrupt the trial to achieve, by ordering a report, the Law Court's determination of questions of law affecting decision of the case.

Here, the record fails to disclose the circumstances surrounding the order of a mistrial or the reason a mistrial was ordered. At oral argument counsel stated that the presiding Justice declared the mistrial solely to order the case reported to this Court. Were this the fact, plainly the issues involved were not of such exceptionally important nature as to justify declaring a mistrial in order to report them for decision by the Law Court. Since the existence of the mistrial and the explanatory statements of counsel at oral argument provide prima facie indication that the ordering of a report was inappropriate—indeed, may have been an abuse of discretion by the presiding Justice,—and since the record provides no circumstances to show a compelling need for the declaration of a mistrial in order to have the questions involved reported to the Law Court, we must discharge this report as improvident.

The entry is:

*Report discharged.*

DELAHANTY, J., *did not sit.*

All Justices concurring.

1. It should be noted, however, that such agreement by the defendant to an order of mistrial could prevent defendant from claiming successfully that a re-trial subjects him to double jeopardy.